HAYNES, J.
Error to the.Court of Common Pleas of Lucas county.
This is a petition in error filed for the purpose of reversing the judgment of the court of common pleas of Lucas county. The case was brought in the court below by Margaret Everding, Carl H. Gram, William Arthur Gram, an infant, by his next friend Margaret Everding, and Albert Gram, an infant, by his next friend, Margaret Everding, plaintiffs, against the supreme oommandery of the Order of the Knights of the Golden Rule,defendants. In their petition the plaintiffs aver, first, that William Arthur Gram and Albert Gram, set out in the caption above, are each minors, and are each under the age of twenty years; that this action is prosecuted by Margaret Everding, next friend of said William Arthur Gram and said Albert Gram, for the benefit of said minors respectively. It then proceeds to set out that the defendant company is an association in the nature of an insurance association, and that one Charles E. Gram, who was formerly the husband of Margaret Everding and the father of these children by the name of Gram, became a member or Castle Oliver, so-called— at Toledo, Ohio — of the Knights of the Golden Rule, of the third class, and they aver that on the first day of July, 1882, he was then such member of such order and in good standing and entitled to all the benefits of the order. They then set up that the defendant company, on April 7, 1880 executed to them a certificate made in accordance with the rules and regulations of said order and through said Castle Oliver, and they set forth a copy of it and attach it to the petition,and aver that the said defendant thereby became obligated to pay to said Margaret Everding, at that time Margaret Gram, Carl H. Gram, William Arthur Gram and Albert Gram $2,000, together with accrued assessments, provided there were sufficient members of said class so that the assessment should realize that amount in excess of amount reserved by the rules of said order for expenses, and plaintiff alleges the fact to be that there were sufficient members in said class to pay the member’s benefit, and that there is due them from said order the sum of $2,000 and interest from July, 1882. Plaint ffs further allega that on July 1, *691 1882, said Charles F, Gram disappeared and has never sinee been seen by them, or anyone, to their knowledge, and that said Gram has been missing for over seven years last past, and plaintiffs allege lhat on said day said Charles F. Gram died. Plaintiffs allege that proof of his said death and proof of the good standing of said clecedent in the third class of the order at said date has been duly furnished to said order and supreme eommandery, and that the benefit certificate set out as exhibit “A” has been tendered to said order and supreme eommandery and payment thereof demanded and refused. Plaintiffs say that said formal proof of death was furnished on or about the (blank) day of September, 1889. (The word “September”, there, it is said, is written over the word “May”. It is pretty clear and distinct, although we can see the “Y”. I speak of this in passing, for it will come up further on.) Plaintiffs further say that on or about July 10th, 1882, they notified said Castie and caused said supreme comtnandery to be notified of the disappearance of the said Charles F. Gram, and that said order and Castle then agreed to take the matter of the disappearance of said Charles F. Gram under advisement and refused to accept and receive payment of the only assessment which was then payable — which assessment was not payable at the time of the disappearance of said Gram —and have since refused to pay the amount due on the said certificate alleging as a reason'that said Gram was not dead.
To that there was a demurrer: First, that there is a misjoinder of parties. Second, that the petition does not set forth facts sufficient to constitute a cause of action against defendant.
The demurrer being overruled, the defendant below filed an answer to the petition as amended, as is stated here. That answer was filed November 12, 1890. Suffice it to say, that, having admitted the existence of the order and the issuance of the certificate, they deny the death of the plaintiff and aver that he had failed to perform the conditions of the certificate— in that he had failed to pay certain assessments, and that by reason thereof he had ceased to be a member. They say also that there were not two thousand members in the third class, “Defendant further answering says, it lias no knowledge, except the statements in said petition, that Margaret Everding ever was the wife of Charles F. Gram, nor that Carl H. Gram, William Arthur Gram and Albert Gram are his children, that they are the only children, or that they are minors under the age of twenty years. * * * Defendant admits that the certificate of benefit would upon the conditions set out in the certificate after the death of said Charles F. Gram, entitle Margaret Gram and his children to the" benefits provided for in said certificate after the death of Charles F. Gram, provided the declarations and representations of said applicant for such certificate were truthfully made, and that said Charles F. Gram should continue up to the time of his death a member in good standing in said order and in said Castle Oliver No. 25, and upon the full compliance with the laws of said order in force at the time of his death, and the payment of all dues and assessments levied arid required to be paid by him to the Knight benefit fund of this class, and he had no’t .committed suicide, and upon due notice and proof cf his death and proof of his good standing in the third class of the order.
*692 They admit that he would be entitled to receive the benefit of this certificate if he had complied with the conditions which we have mentioned. But they aver “That saict Charles F. Gram obtained said benefit certifioate upon declarations which are false and untrue, and that he had not complied-with all the rules and regulations of the order: that he has not-paid all the dues and assessments made upon him ; that for-that reason,long prior to the first day of July, 1882, he had not been in good standing in said Castle Oliver and has been under-suspension from membership in the order of the Knights of the-Gulden Buie prior to said date. Defendant denies that said Gram died on July 1st, 1882, or that he has died at any time since said date: Defendant denies- that piroof of the death of. said Charles F. Gram, or of his good standing in Castle- Oliver has been made or furnished to defendant; denies that Ulereare or ever have been 2000 members in good standing in said-, third class. And defendant denies each and every allegation in said amended petition not expressly answered or denied, as. therein alleged.”
To that there was a reply. The case came up first upon-demurrer to the petition. That was overruled. The petition — after averring the existence of the obligation and the issuing of the certificate, had averred that the party had died at the date certified, to-wit in July, 1882. It averred that proof had been made to thé defendant of the death-of the party, and it made its claim for the sum of $2,000. It is true as is stated — and it is not denied — that the petition did show at that time that the proofs were filed in May, 1889; that would be within seven years from 1882. The court overruled the demurrer; and it seems to us that they overruled it lightly, as far as the main question is concerned, because, there was a distinct averment of his death at a particular time,- and that the other allegations were sufficient to show an obligation on the part of the defendant to pay, and a proof of loss-filed' before the commencement of the suit. It is only when you strike out the- allegation of death in 1882, that the filing of' the proof in May becomes a matter of any consequence in this, suit; because having stricken out that allegation, then the claim can be filed with the company within the seven years.
But going back to the first point which was raised in the demurrer, and which was here argued,’ and that is, that the suit, is not properly brought in the name of the proper parties to the-suit. The benefit certificate which is authorized by the company, and which is in accordance with the rules of the company, provides.
“This certifies, that the Order of Knight's of the Golden Buiehas been conferred upon Comrade Charles F. Gram,and that he. is a member of the order in'good standing in Castle Oliver No. 25, located at Toledo, state of Ohio. And in consideration of' the representations and declarations made in his application for-this certificate; which application is oh file in the supreme secretary’s office, and is made a part hereof,:and the payment' of the admission fee of one dollar, and in consideration of the payment hereafter to the knight benefit fund of this class of the order, of all assessments as levied and required by the supreme commandery, the full compliance with all the laws of-this'order now in force or that may’hereafter be enacted, and *693 ■the being'.'in-good standing .under-sajd laws, the sum of two; thousand.Tlollars,-. together with accrucdiassessments,- will '-be paid from the knight-benefit fund of the third class of this'or-der, by the supreme commandery Knights of the Golden1 Rule, to his svife Margaret Gram and his children as said Comrade has directed in his application for this certificate, or. as he •shall hereafter direct in an application for a change thereof under the laws of the order, upon due notice and proof of his death, and proof of his good standing in the third class of the order, at the time of his death and the surrender of this certificate, but not otherwise:
Provided, however, that if there shall not be sufficient members in this class to pay the maxmium benefit, there shall • only be paid a sum equal to one dollar for each member in •good standing in this class at tho time of the death of said Comrad Charles F. Gram, less ten per cent, to the expense .and reserve fund, as provided by law, together with the full amount of said Comrade’s accrued assessments paid by him in this class: And provided further, that any violation of the .above-mentioned conditions, or of the requirements of the laws now in force, or hereafter enacted, governing the order, nr this • class, shall render this certificate, and all claims under 'it, or upon the order, null and void, in which event the . supreme commandery shall not be liable for the above sum or any part •thereof. ”
Now the suit is brought in the name of Margaret Everding, Carl H. Gram, William Arthur Gram, an infant, by his next ■friend, Margaret Everding, and Albert Gram, an infant by bis next friend, Margaret Everding. The averment of the petition -is that-the two last-named are infants, and that the suit is brought by Margaret Everding as their next friend. Now it is ■ claimed that the caption of the petition is no part of the petition — that we must refer to the body of the petition for* the parties, and some work on pleading is .cited. The custom, in ■ Ohio has been, and the understanding has been, and the practice, working under the code has been, ever since its adoption, that the statement of the parties named in the petition as plaintiff constitutes them plaintiffs and is a sufficient statement of the names of the parties who, are plaintiffs. If there is any qualification to be made in anjr respect, it should be properly followed by an averment, as is done here, that they •.are minors and bring suit by their next friend. The plaintiffs . alluded to are the plaintiffs who are named above, and Bliss in his work quotes some of the'decisions of other states hold- ■ ing-that that is a sufficient statement of the names of the plaintiffs. Our own experience has been during all of the time we have been at the bar that it is customary to commence a • suit in this way, and we think it is proper so far as the names • of the plaintiffs are concerned that they are put once at the head of the petition, as required by the code, and that it is not ■necessary afterwards to name them, but the parties may be •simply classed as plaintiffs or defendants.
There is back of that, however, a question of more import-anoe that has been argued,at greater length, but I think I will refer to it further on. Sufficient to say, that, on these other r grounds, the court did not err in overruling the demurrer.
. We will turn, next to the question of the amendment to the *694 petición. Upon reading the record of the case it shows that the whole case was tried, and the parties proceeded to offer their evidence in regard to the proof of the time when the proofs were filed with the defendant company — upon the assumption or theory that the time that was in issue was the time fixed — September, 1889. The record shows that the court had no knowledge that any other or different time was named in the petition, or had been. The court says, at the time of the making of the question: “Objection was made at no time to the admissibility of evidence relating to the proof of September, 1889, on the ground that the making of such proof had not been alleged in the petition.” And an examination of the record shows the correctness of that statement, and the court was not aware that it was not alleged in the petition until counsel for plaintiff asked leave to amend his petition in that regard. And it appears that the parties went on to offer proof in regard to the filing of this September proof as alleged, Mr. Fuller giving testimony that he filed'it at the office at such a date, and Mr. Irving giving testimony in regard to the matter which tended to show, at least, proof to the contrary. There was objection made to the proofs at this time, on the ground that they Were not in proper form, and there was considerable discussion upon that question and quite a number of questions asked by the court,and the result was that while counsel were objecting that they were not in proper form, yet the evidence showed that at the time when they were said to have been filed at the office of the company, by Mr. Fuller, in September, 189— that they made no objection whatever to the form of the proof, but simply said in reply that Gram was not a member of the company in July, 1882, nor'after that time. After the evidence was all in, and after the court had permitted these proofs to be offered in evidence and counsel had commenced the argument of the case, then counsel foe plaintiff made án application to be allowed to amend the petition by interlining that the proofs were filed in September instead of May, as was stated. The court allowed the amendment and it was interlined by writing “September” over “May”, and it was admitted by the record that the word “May” before that time had been written, but it was practically obliterated.
Counsel for defendant belpw are very earnest in their objection, and in arguing the objection, that the court had no right to allow this amendment — or perhaps I should state it a littie differently — by saying that it was an abuse of the discretion of the court below to allow it to be done at all. We have had occasion to examine this question heretofore, in a case in Wood county, and at that time there was a very full determination of the law upon the subject, and the rule laid down by the supreme court is, that in a case of this kind, where testimony has been offered, without objection, that is not in accordance with the terms of the pleadings of the parties, they courts may then allow an amendment to be made in the record to conform to the evidence. They may, if objection be made at the time the testimony is offered — that it is not in accordance with the allegations of the pleadings of the parties — they may then allow the amendment to be made; but if the opposite party makes a.showing to the. court that he has been.,taken by . surprise-, or is prejudiced by the amendment, then the court shall *695 give him time in which to make his pleadings and prepare-himself for trial — to amend the allegations; and we followed those decisions in the holdings which we made in Wood county. Now, this evidence having gone in without objection, no claim being made that the party was misled in regard to it in his testimony in defence, the court permitted the pleading's to be amended, and in doing that there was no abuse of the discretion of the court, in our view, and we think that it was, in the-language of the statute, “in furtherance of justice”.
There is another question that is discussed here, and that is the question of the burden of proof upon the conditions. It will be observed, as has already been read, that there was-given to the party a certificate wherein the company certified that he was entitled, and whereby they agreed to pay to his-wife Margaret Gram and his children, the sum of $2,000, with the proviso attached to it: “that if there shall not be sufficient members in this class to pay the maximum benefit, there shall only be paid the sum of one dollar for each member in good' standing in this class at the lime of the death of said Comrade' Charles F. Gram, less ten per cent, to the expense and reserve fund”. The allegation of the petition was, as I have already read, that the party had received this certificate, and1 the defendant had become hound to pay $2,000. Ihe defendant admittd that he had received the certificate, and that they would have been bound to pay providing be had not made certain representations and bad not failed to pay certain assessments. And they deny that there were two thousand members of this class at the time. It does not state how many there-were.
We are of the opinion that the court of common pleas did not err in bolding that the burden of proof in this matter was upon the defendant — in view of the pleadings in this case. The-question might also arise, and probably it was one of the questions raised by the parties on demurrer: that there should-have been a distinct allegation of the full number of (lie class;but they did aver that they were entitled to that sum in that class. There is a case cited in.volume 25 of the Law Bulletin page 29, which is a court of common pleas decision.out it gives a very full list of cases, and it is there held that the ease belongs to that class of exceptions that are within the knowledge-of the defendant exclusively; that it is a condition-which relieves the party from the payment of that which he has promised by an absolute promise to pay. If there is a promise to pay $2,000, the company exempts itself from paying that arriount upon the death of the party by a proviso that if there should be less than that number in that class, then they shall pay only one dollar for every member of' that class, and that exception should be pleaded by them— should he set out by them — and should be proved by them. There is a large number of cases cited. There is in last week’s-Law Bulletin — commenood in the week before — a case decided in Cleveland, a decision of Judge Baldwin, in which an opinion is given upon allegations of this kind. There had been-allegations that at the time the party became a member of the-order there were a number of members equal to the number ot dollars metioned by the certificate. The. court charged the jury that the burden of proof was on the plaintiff to show that; *696 ,at the time the party died there was,the full number of .members in that particular order which “would entitle: him, at the given rate, to the full sum claimed in his petition. The court, by a large citation of authorities, held, that the common pleas had erred in this respect. Probably there must have been some misquotation in the record itself; at any rate, the circuit court held that the court below had erred in this respect. W’e think the weight of authority is very clear, that the defendant was bound to prove this exception; that it was bound to show and had the means of showing, if there was not that number at the time the party entered, and more especially if there was not that number at the time ho died, or was supposed to have died, which would enable him to have had the full sum of $2,000.
Another question is raised, and I supp--se it was argued on the demurrer, as I have already said — but it was raised after-wards in the pleadings — upon the right of Margaret Everding to sue. She was the wife of Gram at the time he became a member of'this order; she was the wife of Gram at the time he left, in July, 1882 — he having disappeared on the first day of July, 1882, and according to the testimony, has not been seen since. Sue waited three years after he left, and then filed a petition for divorce in the court of common pleas of this county, and obtained a decree of divorce. She had been a resident of this county for two years at least, and perhaps was at the time the pleadings were filed, although she had gone •over sometime during the third year to Detroit, to stay with her family — perhaps she had gone there to live. I don’t consider it very material, right here, whether she had or not, At any rate, she had come in and got a divorce, on the ground of absence and after she obtained that divorce she had married again and became the wife of this man Everding,and with him she was, at the time of the suit, and is now. I suppose, living, at Detroit, Michigan, and counsel for the association proceed upon the theory that she must have, at the time the trial was had, and all tne time, an insurable interest in the life of Charles F. Gram,and object to this suit because, having become •divorced, she ceased to be a member of his family, ceased to be his wife and became the Wife of another, and that therefore her insurable interest had terminated, and she had no right to this money. Now the certificate, as will be remembered, is issued payable, in case of his death, to his wife, Margaret Gram, and his children. Some of these certificates are made payable to the members of the family, and some in -one form ■and some in another. New, this question comes here and has been argued upon demurrer,and is before the court. We think this question is decided by a casein.94 United States, page 457, decided in 1888, where there is a very full citation of authorities and a very fall decision of the case. That was a case where there was a life insurance made upon a man and his wife, payable, I believe, to the snrvivor. Afterwards they became divorced and she intermarried with another party, and was the wife of another party at the time of the commeneement of the suit. The first husband died, and thereupon suit was brought for the recovery of the amount of the insurance, and this very question was raised and was argued by counsel. The case went up from Cincinnati and was argued by Johnson, of Hoadly & Johnson, and the supreme court gave a decision *697 upon the case and treat the law as well established and ' give citations, treating it as a case so clear that it did not need a large amount of argument.- Notwithstanding, it is an important question, and I got some light on the subjeot from it myself. Life insurance proceeds, not upon the theory held in regard to fire insurance, where there must be an insurable interest continuing in the party holding the insurance down to the time of the loss, but the court say it is sufficient that there was such a relation at the timo the policy was issued, that the party would be entitled to be a beneficiary at the time the policy issued, and that having existed at the time the policy was issued, no matter what occurred afterwards, her interest in the policy could not be terminated; that the party being a beneficiary, it continued to be an obligation to pay a certain amount of money on the happening of a certain event, and they hold that the divorce of the party and the intermarriage of the party made no difference whatever, and that she was entitled to recover and receive the benefit. It is so decided by leading cases on insurance, and we think this is a correct statement of the law of the case.
This certificate reads that there shall be paid to Margaret Gram, who was then his wife, and designates her as the particular person to whom this sum was to bs paid in connection with his children, and the suit is brought in her name and in the name of the children, and we have no doubt but they are the proper persons to bring the suit,and are the proper persons to recover if anybody is entitled to recover, the amount of this certificate.
There was a question discussed in regard to the payment of the assessment — a question as to whether this man was a member of this lodge or council; whether the policy was still in force which was being sued upon. It appears from the testimony that after Gram had become a member of the Castle he paid up his dues from time to time,and that the last dues which he paid was on the 17th of June, being the June assessment, which was due on the first of June, 1882, boing a few days before he went away. It further appears that there was issued to the secretary of the Oastle, from the home office, as- we should say, that is, from the supreme commandery, in proper form, an assessment for July, and that that was received by the secretary and sent out by him to Gram — at what time I do not know, but I believe he sent them on the first, and this came to the house after Gram had disappeared, as I understand. By the rules of the company, he had thirty days to pay that assessment in. These assessments were found among his papers. On the 10th of July Mrs. Gram went to the office of the company and offered to pay $8. The officers declined to receive this — from the fact that l-e had disappeared, and they wanted to get further news from him — what had become of him; and also wanted further orders from their superior officers — the general commandery. However, they never made any application to the supreme commandery, and there as nothing said about that from that time forward down to this, and no further assessments were ever made or demanded of Gram. These assessments would be due, then, on the first day of *698 July, by the rules of the company. But also, by the rules of the’company, if a party did not pay them upon the first day of July, he might pay them at any time within thirty days thereafter. By the rules of the company also the party would be suspended, on the first day of July. But, without any further examination, or anything of that kind, by the rules of the company, he might within the next thirty days, pay the amount of the assessment and be fully reinstated and taken back as a member; his suspension should not really take effect, practically, until the expiration of thirty days, while he had the right to pay. Now the question is made whether or not he was a member of the order and the certificate was in force at the time the suit was brought. There has been considerable discussion upon the question of this seven year limitation and a good deal of learning expended upon that in the authorities Which have.been cited. The presumption of law is, that after the expiration of that time from his disappearance — taking, of course into account the circumstances under which he disappeared — if he has not been heard from, he is presumed to be dead. The question is as to the status of the presumption during the seven years. There is a very instructive case upon that question found in 72 Wisconsin, page 170, and that seems to give all the law upon the subject down to the present time. The holding of that authority is that there is no presumption upon the question one way or the other. It is contended here that the plaintiff should prove that the person was living on the 10th day of July, at the time this money was tendered. On the other hand, it was claimed that the defendant oompany should prove that the party was dead before that time. This authority says there is no presumption one way or the other. The court state that there was no presumption that the party bad died until seven years had elapsed, and then the law presumes tha't the party is dead. Now we are of the opinion that Mrs. Gram had the right to tender that money. She was the beneficiary in that certificate or policy,and she had a right to tender it on behalf of her husband, so as to keep that policy alive,if per adventure the man might return. They refused to take it simply for the reason that he had gone away, and they not knowing whether he was dead or not. We think that the proof, if any proof was needed, should have come from them, that the party was dead at the time the tender was made, and the charge of the court proceeded upon that assumption. The case went to the jury, which found for the plaintiff, and the court sustained that finding, and we think it properly did so. That is one of the leading points in the case.
Judge Pike: Does the court make any finding on the refusal to allow the introduction of the record of the.divorce suit?
The Court: We see no error in that. The question was discussed there, and the question proceeded in the discussion as to what she might have done or set up, and had something to do with the proof that he was dead. We do not understand that if she had admitted that he was living, or dead, that it would have changed the presumption of law. The fact of the divorce was admitted, and was before the jury. There was no presumption that the man was living, or dead. This woman could not marry again during the seven years without subjecting herself to a liability tc be prosecuted for bigamy, for, as *699 long ago as 1830 ' I think it was, a court in Massachusetts held that where a woman had married within five years, although she had heard that her husband was dead, she was held not entitled to marry until after the seven years. This woman would have been subject to a prosecution for bigamy if she had married within that time without a divorce. It was proper for her under the divorce laws of the state — and we think it is the same in Michigan — to make an application for the purpose of clearing herself of the marriage relatiou which existed,and she proceeded upon the presumption that he was still living as sh9 properly should. There was no presumption of law as to his death until the seven years had expired from the date at which he had disappeared. We do not see how the fact of the divorce cuts any figure in the case in regard to that presumption. Either party might have offered evidence for the purpose of showing the fact that he had died at any time within the period of seven years, as they might have offered evidence for the purpose of showing that lie did not die at all. As has been said, there was in the case no presumption except the presumption of law. He had gone away, and had not been heard ■of. Nobody knew whether he was alive or dead. We have read the charge and the requests to charge,and we are clear in the opinion that the court gave the law as fully as the plaintiff or the defendant was entitled to have it,and that there was no error in declining to give further charges asked by the defendant below. After a very careful examination of the record, we are clearly of the opinion that the judgment of the court of ■common pleas should be affirmed, but there was reasonable cause for bringing the case before this court.
The plaintiff in error excepted to the aotion of the court in affirming the judgment below.