No. 12,081.

KANSAS CITY LIFE INSURANCE COMPANY *v.* MARSHALL.

Decided May 21, 1928. Rehearing denied June 11, 1928.

72

Mr. Frank F. Dolan, for plaintiff in error.

Messrs. Rinn & Connell, for defendant in error.

*Department Two.*

Mr. Justice Campbell delivered the opinion of the court.

As the beneficiary in a life insurance policy, issued by the defendant company on the life of James W. Marshall, plaintiff's husband, the jury's verdict was for the plaintiff in the sum of $932.57, on which judgment was rendered and the defendant is here with its writ of error.

In the opening of its brief defendant says that the case presents the question as to whether the beneficiary of a life insurance policy may recover thereon, in what is commonly called a "disappearance case," when the policy has expired because of the nonpayment of premiums a few months less than five years after such claimed disappearance, and when there is no direct proof or evidence of death, or of any facts or circumstances from which the death of the insured could properly have been found to have occurred during the continuance or life of the policy. While this statement, from its own standpoint, is the defendant's conception of the important and controlling question in the case, its assignments of error are so numerous and directed to other rulings on other questions, that we deem it helpful, first, to summarize the facts as disclosed by the record, particularly as the defendant's foregoing statement is neither complete nor entirely accurate. In other words, defendant's above summary as to the facts developed at the trial, are not in harmony with the facts as elicited from the plaintiff's witnesses and as found by the jury upon evidence more or less conflicting.

The policy was issued August 18, 1914, and made payable to the plaintiff, Dora Marshall, wife of the insured, upon due proofs of his death during the continuance of the policy. All of the premiums had not been paid, in accordance with the requirements of the policy, but it was continued in force, in accordance with its automatic loan provision, to June 18, 1925, at which time the policy expired. Marshall, the insured, disappeared September 8, 1920, and, notwithstanding the diligent search and inquiry that were made, has never been heard of, or from, or seen, since that date. As it is conceded that the plaintiff has proceeded in this action upon the basis of the presumption of death on the seven years' unexplained absence of the insured, both parties produced testimony on this issue, which, as might be expected, is not in complete harmony. The insured, forty years of age, was a

74

farmer living in Boulder county at the time of his disappearance. On September 8, 1920, he drove his truck from his home to the city of Denver to attend the funeral of a relative who had been killed in a railway collision. He did not return home thereafter nor did he attend the funeral. About ten days after his disappearance his truck was found in a garage in Denver and in it were various articles which he had bought in Denver for his wife and family; among other things, a slab of bacon, repair parts for a corn binder, groceries and other articles for use on his farm. Marshall and his wife had three minor children. The testimony is uncontradicted that he had a deep affection for them and these children were constantly with the family while the work on the farm was progressing. Marshall was healthy, sober, industrious, of good habits, had never before to plaintiff's knowledge remained away from home for any considerable time. His farm was not entirely paid for and there was a mortgage in a considerable sum upon it. Hail had damaged his crops. but, on the whole, the testimony in plaintiff's behalf shows that he was a contented and hopeful man.. When he left home to go to the funeral he left all his personal effects and clothing at his home, except what he wore at the time of his disappearance. He cashed a check in Denver and with the money thus received made the purchases mentioned. As stated, he did not appear at the funeral, although he had telephoned to his sister in Denver that he was leaving immediately to attend the funeral. The fact of Marshall's disappearance and the facts surrounding the same were published in one or more Denver newspapers. The police department of Denver was notified thereof but for a period of more than seven years after his disappearance no tidings have ever reached his family.

In addition to these facts it should be stated that the defendant produced testimony of witnesses that purported, and its tendency was supposed, to weaken or overcome the plaintiff's evidence which indicated that the

death of the insured is the only reasonable presumption that could account for his absence for more than seven years from his family. This testimony in defendant's behalf is to the effect that the insured's indebtedness upon his farm was in a considerable sum and that he was not able to make the payments that became due from time to time on the same, being in arrears more than one year at the time of his disappearance; that his chattels were mortgaged for as much as, or more than, their value; that his crops had been damaged by hail, and that he had failed to pay the premiums due on his insurance policy. One witness testified that some one had told him that Marshall on a previous occasion had disappeared for ten days and upon his return acted as if he had left the night before. The insurance company was seasonably notified by the plaintiff of Marshall's disappearance and received the newspaper articles concerning the same, and accepted and acknowledged receipt of this notice and in its letter to the plaintiff stated that, if Marshall's disappearance remained permanent for the period of seven years as required by law, when he would be considered legally dead, it would then take up the matter of settlement with her. After the seven year period had expired, the plaintiff again wrote the defendant company going into details and submitted the facts and proofs of death and asked for forms or blanks for her to execute, if the defendant desired the same, with the suggestion that she would furnish further proof if necessary. In answering this letter the defendant for the first time denied liability on the sole ground that the policy had expired in the interim on June 18, 1925, and asserted that there was a fixed presumption, from the seven years' absence, that the insured died at the end of the seven year period immediately following the day of the disappearance, and not at some time between the disappearance and before June 18, 1925, and while the policy itself was in force and hence that the policy had lapsed. On September 9, 1927, through her counsel, plaintiff again wrote the defendant

in detail as to the material facts as above outlined, and the defendant answered by letter on September 14, 1927, stating, in substance, as the basis of nonliability that death in such cases might be inferred in law within and short of such seven year period *only* when the one who disappeared was shown by the evidence to have been in contact with some specific peril which likely produced death.

1. From this statement it will readily be seen what the real and important issue in the case is. There seems to be no contention by the defendant that notice and proofs were defective or insufficient, except as to the legal obstacle mentioned by defendant's counsel to a recovery on the policy. Again briefly stating or summarizing the defendant's objection, it is that the facts of the case as they appeared in the evidence at the trial, do not show that Marshall had been in contact with some specific peril, at or before the time of his death, which likely produced that result. The fact that there was no testimony of an eye-witness to death is not claimed, so that is not an issue in the case. Bearing in mind the foregoing facts and such other facts as will be mentioned in the appropriate place in the opinion, after first disposing of certain preliminary objections to the complaint, we shall take up and consider the vital legal question.

2. Several dilatory motions by the defendant directed to the complaint were filed. They were to make certain allegations more definite and certain; separately to state and number the alleged different causes of action; to require plaintiff to elect upon which of the alleged causes of action she would proceed. All motions were overruled, except one which the court sustained and plaintiff was permitted to, and did, amend her complaint accordingly. Afterwards demurrers, general and special, were filed. None of the attacks on the complaint was well founded. The court properly and correctly ruled as to all of them. Without going into detail we dispose of all of these assignments upon alleged erroneous rulings concerning the

complaint, by stating that they are untenable; some are frivolous; some are waived by answering over, and none is of any substantial merit and no prejudice could possibly have resulted to the defendant by the court's rulings thereon. Thereafter the defendant filed an answer denying the alleged death of the insured and set up some supposed new matters by way of defense, to which new matters replication was filed and upon the issues thus joined the trial was had.

3. The case was well presented by counsel and the trial was conducted with unusual care by the court. Instructions given to the jury stated the correct principles of law applicable to the facts. Such instructions, or parts of instructions, as were applicable, and asked for by the defendant, were embodied in the instructions as given by the court of its own motion. We find no prejudicial error in the court's rulings upon the evidence or in its instructions to the jury. This leads us directly to the discussion of the real and only question for decision. We shall not follow defendant's counsel in the order in which he presents his argument on his five separate assignments or specifications of error. We think all of them, except the assignment relating to the pleadings already determined, may be grouped for discussion into the inquiry as to the law relating to the time of death in a disappearance case, and whether the evidence is sufficient to warrant the conclusion reached by the jury that the insured Marshall is dead, and that his death occurred within the period of seven years from the date of his disappearance, September 8, 1920, and at sometime prior thereto, and within the seven year period, before the expiration of the policy on June 18, 1925.

Restating the respective contentions of the parties, we observe that the plaintiff's claim is that Marshall died on the day of his disappearance, September 8, 1920, or at sometime thereafter prior to June 18, 1925, when the policy expired. The defendant's contention is that the presumption of law is, and there is, as it improperly

assumes, no evidence to the contrary, that the death occurred on the last day of the seven year period, following disappearance, which was subsequent to the expiration of the policy and, hence, a recovery thereon was barred.

We do not find that the defendant seriously contends that the evidence is not sufficient to justify the jury's finding that Marshall is dead. If, however, that is its contention, the evidence above summarized, if the jury believed it to be true, abundantly shows that the jury's finding rests upon a solid basis. The defendant's real objection is that, assuming that the evidence is of such probative effect, that death is rightly presumed to have occurred at some time yet, since the presumption of life continues until it is displaced by a more potent one, (the presumption of death from seven years' absence), neither the court nor jury may presume that death occurred at any intermediate period unless there is competent and satisfactory evidence that the individual was at some particular time in contact with a specific peril as a circumstance to quicken the operation of time, or evidence of an eye-witness that death is produced. The latter element we have already said is not involved here.

The law as to presumption of death from seven years' unexplained absence, we have adopted from the common law. It prevails generally in our state courts and is enforced in the federal tribunals. In 17 C. J. p. 1159, et seq., is a valuable chapter on death and presumptions. The same subject is elaborately treated in 1 Jones Commentaries on Evidence, chapters 2 and 3, under the title "Presumptions." See also 8 R. C. L. p. 713. The defendant, as will be observed, contends—and authorities from Pennsylvania, Illinois and other states are cited—that while presumption of death from disappearance, unexplained, may be indulged, the presumption created is not that the one who disappeared died within that period, but immediately upon the *expiration* of that period. The further contention of the defendant is that

there is no testimony in this case to take it out of the operation of the general rule thus stated, and, therefore, the jury was not entitled to presume that Marshall died at any time before the expiration of the seven year period, and before expiration of the policy. The defendant's counsel himself admits that there are authorities to the contrary, but says that he believes that the better doctrine and the one which this court should follow, is the one which he is pleased· to state as the better rule. We do not think so. The author of the article on ''Death,'' in 17 C. J. p. 1174, says: ''There is much confusion among the cases, sometimes among those in the same jurisdiction, upon the question whether the presumption of death from seven years' absence raises any presumption as to the time of the death. It was the English rule that the presumption was of death only and not of the time of death, which was to be determined by the facts and circumstances of each particular case, and the English rule is sanctioned by the weight of current authority in this country,'' citing a long list of cases, including *Davie v. Briggs,* 97 U. S. 628, and cases from many other jurisdictions in this country, including *New York Life Ins. Co. v. Holck,* 59 Colo. 416, 151 Pac. 916.

Probably the leading case in this country, by commentators· so designated, is *Tisdale v. Connecticut Mutual Life Ins. Co.,* 26 Iowa, 170. The opinion is by Mr. Justice Beck, who states that the death of an absent person may be presumed in· less than seven years from the date of the last intelligence from him, from facts and circumstances other than those showing his exposure to danger which probably resulted in his death. And the learned judge says that as bearing upon this question, evidence of character, habits, domestic relations, and the like, making the abandonment of home and family improbable, and showing a want of all those motives which can be supposed to influence men to such acts, may be sufficient to raise the presumption of death, or from which the death of one absent and unheard from may be inferred, with-

out regard to the duration of such absence. This case is annotated in 96 Am. Dec. 136. In 34 A. L. R. 1383, the reported case of *Goodier v. Mutual Life Ins. Co.,* 158 Minn. 1, 196 N. W. 662, will be found a valuable note on this subject in which the Tisdale case, supra, among many other cases, is referred to. We believe the better doctrine is the one applied in this case by the trial court and jury, and it accords with the great weight of authority; and that presumption is that the death of an absent one may rightly be presumed where the evidence, like that produced by plaintiff's witnesses here, consists of facts and circumstances, other than those showing exposure to danger, which danger probably resulted in his death, or might probably have so resulted, without regard to the duration of the absence, and, as in this case, at some time before the expiration of the seven year period. The statement of defendant's counsel in his brief, that there are no facts or circumstances in this case from which the death of the insured could properly have been found to have occurred during the continuance of the life of the policy, is not only not warranted by the evidence but contrary thereto. While the evidence in some respects is conflicting, it was for the jury to determine therefrom whether it might presume that the death of the insured occurred before the expiration of the seven year period and within the life of the policy. It is rather unusual for counsel on both sides to invoke the same authority, but in this case both of them do cite and rely upon *New York Life Ins. Co. v. Holck,* 59 Colo. 416, 151 Pac. 916. We think, however, that this court in the opinion there has expressed itself upon the precise question raised here. In that case one of the issues was whether the death of the insured was prior to the lapse of the policy. This court, in commenting on the decision of the Court of Appeals of Missouri in *Bradley v. Modern Woodmen of America,* 146 Mo. App. 428, 124 S. W. 69, said: ''The policy involved lapsed, shortly after the disappearance of the insured, and it was held that the peti-

tion was insufficient because it failed to aver the death of the insured prior to the lapse of the policy. This holding was undoubtedly correct, for the reason, as stated in substance in the opinion, that the presumption of death arising from facts properly pleaded, raises no presumption as to the *time* of death.'' This is an express recognition of the doctrine, enforced by the trial court here, that the presumption of death from unexplained absence arises at the expiration of the following seven year period, but not as to the *time* of death, which is to be proved from facts and circumstances of each particular case.

4. Counsel for defendant further says that to hold that the jury was warranted in finding that Marshall died before the expiration of the seven year period immediately following his disappearance, would be to base a presumption upon a presumption; that is, to presume that death followed the disappearance, and then to indulge a later presumption, upon the former presumption, that the death occurred at sometime before the expiration of the seven year period. The defendant is not unaware of, but it overlooks, the fact that the testimony, pro and con, concerning the insured, his relations with his family, the state of his health and other facts above outlined, was introduced for the very purpose not only of showing that death did or did not result, but that it might or might not have resulted, and probably did or did not result, at some time during the lifetime of the policy and before the expiration of the seven year period. That was an issue which it was competent for the jury to determine from the facts elicited with reference thereto. In the state of this record the jury did not base its presumption as to the time of death upon the presumption of death. The Tisdale case expressly says that any facts or circumstances relating to the character, habits, condition, affections, and attachments which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of

one absent and unheard from, whatever has been the duration of such absence. And the learned judge says that a rule excluding such evidence would ignore the motives which prompt human actions, and forbid inquiry into them to explain the conduct of men. Indeed, the defendant's attorney himself introduced his evidence with respect to the indebtedness of the insured and a supposed former disappearance and other evidence of like character, for the purpose of showing not only that the insured was not dead but that he did not die during the lifetime of the policy. As said by Judge Beck: "The competency of evidence of the character above indicated, from which the fact of the death of an absent person may be found within the period of seven years, is well sustained by authority." Citing Greenleaf on Evidence and cases from Maine, New Hampshire, and Angell on Fire and Life Insurance.

We find no prejudicial error in this record and the judgment is accordingly affirmed.

MR. CHIEF JUSTICE DENISON, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.