**WESTPHAL et al. v. KANSAS CITY LIFE INS. CO. (two cases).**

**Nos. 7824, 7825.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 5, 1942.

Rehearing Denied Feb. 26, 1942.

EVANS, Circuit Judge, dissenting.

Arnold C. Otto, of Milwaukee, Wis., for appellant Westphal.

Bernard V. Brady, A. McC. Schlesinger, and John W. O'Boyle, all of Milwaukee, Wis. (Olwell & Brady, of Milwaukee, Wis., of counsel), for Kansas City Life Ins. Co.

Before EVANS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

These appeals are from a judgment entered upon a jury verdict for the plaintiffs in their action to recover as beneficiaries on three insurance policies issued by the defendant upon the life of F. Gilbert Westphal. Westphal disappeared on November 5, 1931, and the jury found that he died before any of the lapse dates of the three policies—the earliest lapse date being 21 days after his disappearance. The Insurance Company raises as errors (1) the failure of the court to grant defendant's motions for a directed verdict and judgment notwithstanding the verdict, (2) the court's striking the Company's amendment to its answer setting up an alternative defense, and (3) certain rulings on the evidence. The insured's widow premises her appeal upon the theory that the trial court wrongfully allowed certain deductions from the face amounts of the policies as indebtedness of the insured to the defendant.

The important and controlling facts are not in dispute. On the date of his disappearance, F. Gilbert Westphal was a man of 33 years of age and had been married for ten years. He lived with his wife and three daughters in Shorewood, a suburb of Milwaukee, and was employed as cashier of the defendant Insurance Company's Milwaukee office. His salary at the time was $175 a month and he earned on the average an additional $110 a month from commissions on the sale of life insurance. Westphal came from a splendid family. His father and two of his brothers are ministers.

A third brother is a physician and surgeon in the United States Public Health Service. The fourth brother is an aeronautical engineer. He had a married sister. With all of his family he had been on friendly terms and had visited and corresponded with them.

To all who knew him F. Gilbert Westphal seemed a wholesome and industrious man "filled with friendliness, love, duty, and devotion." At an early age he joined the church. When he attended college, he earned his expenses and made the highest grades; he sang in the Glee Club and was elected to a student office of honor; on occasions he would preach in the pulpits of absent ministers; and he was in the student army training corps. After leaving college, he held positions of financial trust as an employee of a bank and as treasurer of the school board. He did not speculate on the market and he and his wife did not live in an extravagant manner.

But for quite some time before his disappearance he had methodically embezzled the premium moneys paid to him as cashier of the defendant's Milwaukee office by falsifying the daily reports to the home office. The Company permitted an insured to pay his premiums on either an annual, semi-annual, quarterly, or monthly basis without advance notice as to which course he would pursue at the time. Westphal would collect an annual or semi-annual premium, but would deposit and falsely report a quarterly or monthly premium. Two weeks before the disappearance, the traveling auditor noticed an apparent irregularity in that there was a difference between a premium receipt of a policy holder and the amount that Westphal had reported as collected on the policy. The auditor decided to refer this matter to the auditor at the home office. At that time, the auditor also found Westphal's personal check for $340 in the cash box. This was contrary to the rules of the Company, but Westphal explained it resulted from his having to pay a large automobile repair bill.

Westphal kept accounts in two banks at Chilton, Wisconsin, both of which were overdrawn at the time he disappeared. Two weeks before his disappearance, he borrowed on his note $400 at the State Bank of Chilton. On the day he left, this note was unpaid and on the very day of his disappearance, he went unaccompanied to a Milwaukee bank and cashed his check for $450 drawn on the State Bank of Chilton. The drawee bank subsequently dishonored the check for lack of funds.

Although the day before his disappearance he was in good spirits and that evening had taken his wife and eldest daughter downtown, he became ill after returning home and had to take soda. But on November 5, the day of his disappearance, he kissed his wife and said goodbye in the usual manner before leaving for the office. Later on that morning, Westphal telephoned his wife and told her he had to go to Racine, and could not drive her to a friend's home that noon. Mr. Madden, the Company's agent, called up Mrs. Westphal later that day and told her that her husband had "flown the coop." Westphal left two letters, one to his wife and the other to Madden, admitting the misappropriations. In his letter to Mrs. Westphal he said: "My Dear:

"When you receive this letter you will know that I am gone, not to return until I prove before myself and my God that I am worthy of you and our three beautiful daughters.

"I know that you cannot stand a shock such as this is going to be and still remain with me as my wife. I am therefore removing all danger of my presence annoying you by quietly slipping away.

    *     *     *     *     *     *

"Goodbye Sweetie and may your loved ones be kinder to you than I have been is the wish of

              "Your Tubbie.

"There is a chattel on the car. (The car is in the garage). Payments are due on the 21st of each month at the Wisc. Acceptance Corp. I long to kiss you but dare not. I love you.

                 "F. G. W."

In his letter to Madden he wrote: "My Dear Lou:

"I feel that this is going to hurt you keenly, yet I must tell you that I have not been faithful to the trust you have placed in me. You have always been so fine to me —much better than I deserved.

" 'Buzz' Hale was right—I have used premiums paid in to the Company. No policies have been allowed to lapse, and the Company has received six percent interest on all the money I have used.

    *     *     *     *     *     *

"I myself am going to try to go to some town in which I can get an absolutely new

start and try to make good—or I will pass out in the attempt.

"There seems to be no other way out, and I feel that I cannot look you in the eye again until my self-respect and my innermost self tells me that I can come to you with clean hands and in a position to repay all that I am in arrears.

"Most sincerely yours,

"Gil."

Westphal was last seen at about 7:30 P. M. on November 5, 1931, when he put his automobile in the garage a block from his home and left with a valise in his hand. Since that time, he has not returned and no tidings of him have been received by wife, relatives, or friends.

More than seven years have elapsed since the insured was last seen and heard from. With the stated facts before them, the jury found that Westphal was deceased and that he had died before the lapse periods of his three insurance policies. The jury necessarily fixed the time of death as sometime within twenty-one days after the disappearance.

In the view that we take of this case, it will only be necessary to discuss the contention that the District Court erred in overruling defendant's motion for a directed verdict.

In support of the judgment of the District Court, plaintiffs contend that under the Wisconsin decisions the time of death during the seven years' absence of Westphal was a jury question to be decided from all the facts and circumstances. Delaney v. Metropolitan Life Ins. Co., 216 Wis. 265, 257 N.W. 140; Whiteley v. Equitable Life Assurance Society, 72 Wis. 170, 39 N.W. 369; and White v. Brotherhood of Locomotive Firemen, 165 Wis. 418, 162 N.W. 441.

■ The presumption of death is based on the belief that persons who are absent from their homes will naturally return or at least communicate with their relatives and friends at home. In Wisconsin, the presumption of death arises from a seven-year absence without tidings where, ordinarily, the absent individual would have communicated if he had been alive, Hansen v. Central Verein, etc., 198 Wis. 140, 223 N.W. 571, 64 A.L.R. 1284 and Egger v. Northwestern Mutual Life Ins. Co., 203 Wis. 329, 234 N.W. 328, and when the presumption arises, a question of fact is presented for the jury to decide as to whether the absent

individual was in fact deceased. Hansen v. Central Verein, etc., and Egger v. Northwestern Mutual Life Ins. Co., supra. This presumption of death however has no evidentiary effect on the issue of whether the absent person was dead or alive at any particular time within the seven-year period, and the burden of proving that the absent individual died at any particular time rests upon the party asserting that fact. Dobelin v. Ladies of Maccabees, 171 Wis. 54, 174 N.W. 897; Whiteley v. Equitable, etc.; and Delaney v. Metropolitan, etc., supra.

Implicit in every case involving the seven-year presumption of death is the ultimate question of the determinative weight to be given to different inferences. Although the Wisconsin courts refer to the choice as a question of fact, the very pleading of the presumption demonstrates that the necessary nature of the finding is one of inference and not of fact. It therefore seems clear that the ordinary formulae concerning the province of judge and jury are of little value in a case of this nature. Unmistakably, there are two inferences made from the evidence. The important question is whether the one made by the jury was a legitimate one under the decisions of the Wisconsin courts. Assuming the facts adduced would justify an inference of death after the seven years' silence, Hansen case, supra, it is quite another matter to say that the same facts justify a jury to place the time of death 21 days after Westphal's disappearance.

■ In the Dobelin case, supra, 171 Wis. at page 56, 174 N.W. at page 898, it was said: "Unless the facts and circumstances shown in any particular case are such as warrant a reasonable inference that death took place at some particular time within the seven years, death is not presumed before the end of the period." In the Delaney case, supra, the court said (page 269 of 216 Wis., page 142 of 257 N. W.): "It seems to us that, in view of the fixed character of insured's habits and daily routine, *as well as the absence of any motive for disappearance or absconding,* the sudden and complete break in this routine will reasonably support the inference that he died upon the date of his disappearance." In our case there was no *"absence of any motive for disappearance or absconding."* On the contrary, there was in fact an impelling motive arising from the realization that Westphal's embezzlements were going to belie his apparent reputation

for honesty, and the proofs showed a desire on the part of Westphal to conceal himself until he had rehabilitated himself and was able to repay the funds he had embezzled. These facts and the fact that Westphal obtained $450 from the Milwaukee bank on the day he disappeared and the unexplained use of the money misappropriated are "as fully * * * consistent with a theory of continued life * * * as with an inference" of a "speedy death" and impel us to the conclusion that the plaintiffs have failed to establish the fact that the death of Westphal occurred before any of the lapse dates of the three insurance policies. Dobelin v. Ladies of Maccabees, supra, 171 Wis. page 58, 174 N.W. 897.

The judgment of the District Court is reversed.

EVANS, Circuit Judge (dissenting).

This was a Wisconsin contract, and the law of that state governs the disposition of this case.

The law of Wisconsin is set forth in Delaney v. Metropolitan Life Insurance Co., 216 Wis. 265, 257 N.W. 140. For other Wisconsin cases, see below. [1]

Four propositions of law there announced bear upon this appeal:

(a) A presumption of death arises after seven years of unexplained absence.

(b) No legal presumption exists as to *date* of death, which the seven years' absence established.

"Unless the facts and circumstances shown in any particular case are such as warrant a reasonable inference that death took place at some particular time within the seven years, death is not presumed before the end of the period." Dobelin v. Ladies of Maccabees of the World, 171 Wis. 54, 57, 174 N.W. 897, 898.

(c) The burden is upon the party asserting the fact—the plaintiff—to show death occurred before the date fixed for the payment of the premium.

"The party having the burden of proving death at any particular time must sustain that burden by evidence. In this case the evidence must be such as to warrant the inference that deceased died on the date of his disappearance." Delaney v. Metropolitan Life Ins. Co., 216 Wis. 265, 269, 257 N. W. 140, 142.

(d) Ascertainment of the date of death presents a jury question where there is evidence from which inferences may be drawn that death occurred shortly after disappearance.

"In the instant case it is undisputed that White had been unheard of for more than seven years, and the material question is, At what particular time during the seven years he was unheard of did he die? This is a question of fact, to be determined by the trial court or a jury." White v. Brotherhood, etc., 165 Wis. 418, 422, 162 N.W. 441, 442.

The Wisconsin holdings are in accord with many state supreme court decisions [2]

[1] Whiteley v. Equitable Life Assurance Society, 72 Wis. 170, 39 N.W. 369; White v. Brotherhood of Locomotive Firemen, 165 Wis. 418, 162 N.W. 441; Hansen v. Central Verein, etc., 198 Wis. 140, 223 N.W. 571, 64 A.L.R. 1284; Egger v. Northwestern Mutual Life Ins. Co., 203 Wis. 329, 234 N.W. 328; Dobelin v. Ladies of Maccabees, 171 Wis. 54, 174 N.W. 897.

[2] Fidelity Mut. Life Ass'n v. Mettler, 185 U.S. 308, 22 S.Ct. 662, 46 L.Ed. 922; California: Benjamin v. District Grand Lodge, 171 Cal. 260, 152 P. 731; Colorado: Kansas City L. Ins. Co. v. Marshall, 84 Colo. 71, 268 P. 529, 61 A.L.R. 1321; Kentucky: Kendrick v. Grand Lodge, 8 Ky.Law Rep. 149; Mutual L. Ins. Co. v. Louisville Trust Co., 207 Ky. 654, 269 S.W. 1014; Michigan: Griffin v. Northwestern Mutual Life Ins. Co., 250 Mich. 185, 229 N.W. 509; Minnesota: Goodier v. Mutual L. Ins. Co., 158 Minn. 1, 196 N.W. 662, 34 A.L.R.

1383; Missouri: Bonslett v. N. Y. Life Ins. Co., Mo.Sup., 190 S.W. 870; Johnson v. Sovereign Camp, 163 Mo.App. 728, 147 S.W. 510; Schell v. Metro. L. Ins. Co., Mo.App., 3 S.W.2d 269; Bradley v. Modern Woodmen, 146 Mo.App. 428, 124 S.W. 69; Ohio: Supreme Commandery v. Everding, 20 Ohio Cir.Ct.R. 689, 11 O.C.D. 419; Texas: Sovereign Camp v. Boden, 117 Tex. 229, 1 S.W.2d 256, 61 A.L.R. 682; Amer. Nat. Ins. Co. v. Hicks, Tex.Com.App., 35 S.W.2d 128, 75 A.L.R. 623; Supreme Lodge of the Pathfinder v. Johnson, Tex.Civ.App., 168 S. W. 1010; Washington: Butler v. Supreme Court I. O. F., 53 Wash. 118, 101 P. 481, 26 L.R.A.,N.S., 293.

See also, U. S. v. O'Brien, 4 Cir., 51 F.2d 37; English v. U. S., D.C., 25 F.2d 335; Kansas City L. Ins. Co. v. Marshall, 84 Colo. 71, 268 P. 529, 61 A.L.R. 1321; Gaffney v. Royal Neighbors, 31 Idaho 549, 174 P. 1014; Seeds v. Grand Lodge, 93 Iowa 175, 61 N.W. 411; Har-

All the cases cited held the date of death was for the jury. The precedent value of these decisions, however, is lessened because no two cases are actually factually similar.

A leading case in favor of submitting the question of the date of death to the jury is Tisdale v. Connecticut Mut. L. Ins. Co., 26 Iowa 170, 96 Am.Dec. 136. There, it was said:

"The true doctrine may be readily illustrated thus: An honored and upright citizen, who, through a long life, has enjoyed the fullest confidence of all who knew him,—prosperous in business and successful in the accumulation of wealth; rich in the affection of wife and children, and attached to their society; contented in the enjoyment of his possessions, fond of the associations of his friends, and having that love of country which all good men possess,—with no habits or affections contrary to these traits of character—journeys from his home to a distant city and is never afterward heard of. Must seven years pass, or must it be shown that he was last seen or heard of in peril, before his death can be presumed? No greater wrong could be done to the character of the man than to account for his absence, even after the lapse of a few short months, upon the ground of a wanton abandonment of his family and friends. He could have lived a good and useful life to but little purpose, if those who knew him could even entertain such a suspicion. The reasons that the evidence above mentioned raises a presumption of death are obvious; absence from any other cause, being without motive and inconsistent with the very nature of the person, is improbable. * * * The competency of evidence of the character above

indicated, from which the fact of the death of an absent person may be found within the period of seven years, is well sustained by authority."

Each case has its separate factual background. The basis of the many decisions which have left the date of death to the jury, is the recognition that mental states, intentions, explanations of suicide, and disappearances, are factual in their nature. The facts bearing on mental states, intentions, suicidal causes, etc., and the inferences which flow from such facts, support juries' verdicts just as legitimately and soundly as physical evidence or the spoken word, the truthfulness of which is contested.

The last sentence of the letter (set forth in the majority opinion) to the wife, the mother of his children, might well have been accepted by the jury, over all other evidence, as indicative of a final disappearance from his home and family. It was written under such sad and solemn circumstances as to be prognostic and foreboding. From it the jury might have legitimately drawn an inference of contemplated self-destruction of life by the insured.

All other facts of a contrary nature may well have been eliminated by the jury, and must be entirely excluded by us, save where the testimony offered by appellee is uncontradicted. And in passing upon the verdict, as well as upon the ruling of the court upon a motion for directed verdict, we must necessarily accept that view of the evidence, and the inferences to be drawn therefrom, most favorable to the plaintiff's case.

It follows from what has been said that I think the District Court properly submitted the case to the jury.

---

rison v. Masonic Mut. Ben. Soc., 59 Kan. 29, 51 P. 893; Behlmer v. Grand Lodge, 109 Minn. 305, 123 N.W. 1071, 26 L.R.A.,N.S., 305; Eklund v. Supreme Council, 152 Minn. 20, 187 N.W. 826; Fanning v. Equitable Life Assur. Soc., 264 Pa. 333, 107 A. 715.

In Jones on Evidence, Sec. 291, page 481, it is stated:

"But by the weight of authority, the presumption is only that the person is dead at the expiration of seven years, not that the death occurred at the end of that time or at any other particular time within that period. This is left to be determined as a matter of fact, according to the circumstances which may tend to satisfy the mind that it was at an earlier or later day." (citing many cases) See also, Wigmore, on Evidence, § 2531 b.