**AMERICAN NAT. INS. CO. v. DAILEY et al.**

**No. 11506.**

Court of Civil Appeals of Texas. San Antonio.

April 18, 1945.

Rehearing Denied May 23, 1945.

Maxwell Burkett, of San Antonio, for appellant.

Harry B. Berry, of San Antonio, for appellees.

NORVELL, Justice.

This is an action upon an insurance policy. Judgment was rendered for the appellee, Martha Evans Dailey, upon a special issue jury verdict, and American National Insurance Company has appealed.

The jury found that the insured, Earl Evans, was dead on August 10, 1934, the date selected by the trial court as the time when the insurance policy sued upon became ineffective by reason of nonpayment of premiums. There is no evidence in the record from which the jury's finding could reasonably be inferred, and for that reason appellant's motion for judgment non obstante veredicto should have been granted. This holding makes it unnecessary to discuss a number of the contentions presented by the parties here.

This is a disappearance case. Appellee, the beneficiary under the policy and former wife of the insured, testified that on July 3, 1933, Earl Evans left his home in San Antonio, Texas, with the apparent intention of going to his usual place of work. Without informing his wife, Evans went to Los Angeles, California. On July 15th he mailed a postal card to his wife from that city. She received two further

letters, the last one being dated July 21, 1933. Appellee has heard nothing further from her former husband. Inquiries of his whereabouts were made to no avail. Although appellant attacks the sufficiency and thoroughness of these inquiries, we think, for the purposes of this case, it may be considered that the fact of death was established in accordance with the legal presumption provided for by Article 5541, Vernon's Ann.Civ.Stats.

It is well settled in Texas that "the fact of death, after an absence of seven years successively by a person, is fixed by the statute when the fact of absence is established, * * * but the time of death * * * must be determined by the jury, or by the court in trying the case without the intervention of a jury. Sovereign Camp, W. O. W. v. Boden, 117 Tex. 229, 1 S.W. 2d 256, 258, 61 A.L.R. 682." American Nat. Ins. Co. v. Hicks, Tex.Com.App., 35 S.W.2d 128, 132, 75 A.L.R. 623.

In the Hicks case, above cited, it was held that when the fact of death was established in accordance with the statutory presumption, this fact could be considered along with the other facts of the case in determining the time of death, even though the evidence was insufficient to establish the fact of death independently of the statutory presumption.

From the opinion of the Court of Civil Appeals in the Hicks case, 19 S.W.2d 359, it appears that there was some evidence that Archie Hicks, the insured, was exposed to a specific peril immediately prior to his disappearance. There is no "specific peril" evidence in this case. The Texas courts do not, however, follow the strict rule that death prior to the expiration of the seven year period (when the presumption is relied upon to establish the fact of death) must be shown by evidence that the absentee was at a particular time in contact with a specific peril. Any fact or circumstance from which a reasonable inference may be drawn as to the time of death is proper for the jury's consideration. Aside from evidence of exposure to a specific peril, the usual character of evidence relied upon to establish the time of death in a disappearance case is that which tends to show that, in the light of normal and usual human behavior, there is no other reasonable hypothesis which explains the absence of the missing person other than that of his death at or about the time of his disappearance. The leading case relating to this particular type of evidence is that of Tisdale v. Connecticut Mutual Life Ins. Co., 26 Iowa 170, 96 Am.Dec. 136, which was followed and approved in Sovereign Camp W. O. W. v. Robinson, Tex.Civ.App., 187 S.W. 215.

In appraising the sufficiency of evidence, in law or in fact, which is relied upon to establish the time of death, the general rules applicable to the determination of the sufficiency of the evidence bearing upon any controverted fact issue are applicable. No jury verdict or finding will be allowed to stand which is based upon mere surmise or conjecture. Austin v. Neiman, Tex.Com.App., 14 S.W.2d 794. Evidence which at most raises only a surmise or suspicion of the existence of a fact is in legal contemplation no evidence at all. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

While in certain cases difficulty may arise in establishing a line of demarcation between a "reasonable inference" and a conjecture, we think it fairly appears from the evidence of this case that the time of the death of Earl Evans can not be fixed or determined without resort to surmise and speculation. Earl Evans, after July 21, 1933, wrote no more letters to his wife. Does this fact, coupled with his seven years' absence unheard from, raise a reasonable inference that he died shortly after writing this last letter received by his wife? As above pointed out, there is no evidence that Earl Evans was exposed to any specific peril about the time he was last heard from, nor are any facts disclosed which would indicate suicide, except that Evans was in difficult financial straits. As to suicide, see Westphal v. Kansas City Life Insurance Co., 7 Cir., 126 F.2d 76, particularly the dissenting opinion, page 79. Appellee, therefore, must rely upon the theory that in the light of normal human experience death of Earl Evans shortly after July 21, 1933, is the probable explanation of his failure to communicate with his wife and family.

In arguing that an inference of death at a time short of the seven year period may arise, even though there is no evidence of the absentee's having been exposed to a specific peril, the Supreme Court of Iowa, in an oft-quoted paragraph of Tisdale v. Connecticut Mut. Life Ins. Co., 26 Iowa 170, 96 Am.Dec. 136, said: "An honored and upright citizen, who, through a long life, has enjoyed the fullest confidence of all who knew him,—prosperous in business

and successful in the accumulation of wealth; rich in the affection of wife and children, and attached to their society; contented in the enjoyment of his possessions, fond of the association of his friends, and having that love of country which all good men possess,—with no habits or affections contrary to these traits of character—journeys from his home to a distant city and is never afterward heard of. Must seven years pass, or must it be shown that he was last seen or heard of in peril before his death can be presumed? No greater wrong could be done to the character of the man than to account for his absence, even after the lapse of a few short months, upon the ground of a wanton abandonment of his family and friends. He could have lived a good and useful life to but little purpose, if those who knew him could even entertain such a suspicion. The reasons that the evidence above mentioned raises a presumption of death are obvious; absence from any other cause, being without motive and inconsistent with the very nature of the person, is improbable."

The record here does not present a set of facts similar to the hypothetical statement contained in the Tisdale case. It appears from appellee's testimony that at the time of Earl Evans' disappearance his family, which consisted of his wife and two children, were in a desperate financial situation, as a result of the financial and economic depression then existent. Evans was employed as a relief worker. Appellee stoutly maintained upon the trial that Evans said nothing to her about his proposed trip to California. Without warning to her, he simply left to go to work in San Antonio and turned up some two weeks later in Los Angeles. This action must be classed as unusual, to say the least, when compared with the normal pattern of human behavior. Further, it appears that on September 5, 1934, appellee filed suit for divorce against Earl Evans, alleging that Evans had abandoned her and his two minor children. Service of citation was had by publication. Upon cross-examination in this present action appellee admitted that Evans had given her a severe beating shortly before he left for California and that she had so testified upon the trial of the divorce suit. While the two letters introduced in evidence contain expressions of continued affection on the part of the writer toward his wife and children, their effect as favoring appellee's contentions here is somewhat lessened by an inference which they leave that appellee must have known of the writer's intention to go to California, and the further fact that the letter of July 21st was produced in court in a mutilated condition. These mutilations were accomplished by drawing repeated pencil marks over certain portions of the letter so that the writing underneath was completely obliterated. Parts of sentences were thus marked out so that in certain instances the portion remaining is obscure in meaning or senseless. While appellee's statement that she was not responsible for these mutilations and did not know who was may be accepted as true in view of the jury's findings, yet the fact of mutilation exists and consequently a complete picture is not presented.

This circumstance is in a way typical of the whole of appellee's case. Things are incomplete and do not fit together. The evidence simply raises a number of conflicting conjectures. The selection of one surmise from among a number of speculations is not the function of a jury. In such a case, the burden of proof determines the judgment. In this case appellee has failed to prove the death of the insured at a time when the insurance policy was in force.

We believe our holding here is supported by the overwhelming majority of the American decisions. See 25 C.J.S., Death, § 9, p. 1067; 16 Am.Jur. 30, Annotations: 34 A.L.R. 1389, 61 A.L.R. 1327, 75 A.L.R. 630.

The judgment of the trial court is reversed and judgment here rendered that appellee take nothing.

Reversed and rendered.