HANSEN, Respondent, vs. CENTRAL VEREIN DER GEGENSEITIGEN UNTERSTUETZUNGS GESELLSCHAFT GERMANIA, Appellant.

*January 10—February 5, 1929.*

*Walter H. Bender* of Milwaukee, for the appellant.
*W. B. Rubin* of Milwaukee, of counsel, for the respondent.
The following opinion was filed February 5, 1929:

STEVENS, J. (1) The case presents the question whether this court can review the action of the trial court in directing

the verdict in the absence of an exception to such direction. Sec. 274.34, Stats., provides:

"Upon an appeal from a judgment, . . . the supreme court may review any intermediate order or determination of the court below, which involves the merits and necessarily affects the judgment, appearing upon the record transmitted or returned from the circuit court, whether the same were excepted to or not."

The verdict "involves the merits and necessarily affects the judgment," and it appears "upon the record transmitted." This direction by the court may therefore be reviewed without an exception. *Rosenthal v. Vernon,* 79 Wis. 245, 250–51, 48 N. W. 485. The cases which hold that an exception is essential to review an order directing a verdict are all cases in which it did not appear upon the face of the verdict that it was rendered by direction of the court, with the single exception of *Holum v. C., M. & St. P. R. Co.* 80 Wis. 299, 303, 50 N. W. 99. In that case the court based its decision upon the fact that no exception was taken to the order directing the verdict, and apparently overlooked the fact that the verdict upon its face recited that it was rendered by direction of the court. The statute at that time contained the same provision as that quoted above from sec. 274.34, Stats. It is apparent that there was no thought that the court was overruling *Rosenthal v. Vernon* because that case was not mentioned although it was decided in the same year and by the same judges who participated in the decision of *Rosenthal v. Vernon.*

(2) The case also presents the question whether the presumption of death arises from seven years' absence unheard of where the person whose continuance of life is in question left his home under such circumstances that he would not naturally be expected to communicate with his family.

The presumption of death from long continued absence is of ancient origin. But the rule which gives rise to the pre-

sumption after seven years' absence is modern, comparatively speaking. The period of seven years was adopted because that was the time fixed by acts of the English parliament relating to bigamy and the termination of life estates and leases.

The text-writers took a large part in the formulation of the rule, basing their text upon the early English cases which had permitted jurors to find death in cases involving bigamy and leases or estates for life from the fact that a person had been unheard of, after seven years' absence. In later cases the courts and text-writers reason by analogy from the statutes relating to bigamy and the termination of life estates and leases, so as to permit the presumption of death in other cases after seven years' absence. *Doe v. Jesson*, 6 East, 80, 85; Thayer, Preliminary Treatise on Evidence, 319–324. "Like all other rules, it took its shape from necessity—the necessity of settling property rights and very often status. As the courts had to resort to the presumption of the continuance of life, in the absence of direct proof of life or death, in order to settle important rights which were often involved, it became equally necessary to adopt some counter presumption in classes of cases where the death of the person would in the ordinary course of events seem more probable than the continuance of life. Accordingly, in analogy to certain English statutes, the courts adopted the rule that 'a person, shown not to have been heard of for seven years by those (if any) who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not being heard of without assuming his death.' " 1 Jones, Commentaries on Evidence, 302–303.

This presumption of death is based on the fact that persons who are absent from their homes will naturally return, or at least communicate with their relatives and friends at

home. While some of the earlier writers stated that the presumption of death arose from lack of information after seven years' absence, the modern writers make it an essential part of the rule that the absent person shall have been unheard of by those who would naturally have received news from him, if he had been alive. Thayer, Preliminary Treatise on Evidence, 348; Stephen, Evidence, 149; 4 Wigmore, Evidence, p. 3579; 2 Chamberlayne, Modern Law of Evidence, p. 1347; 1 Jones, Commentaries on Evidence, 302; 17 Corp. Jur. p. 1173.

The decisions in other jurisdictions collected in the brief of the appellant sustain the rule stated by the modern text-writers. The cases in which the rule as to the presumption of death arising from seven years' absence has been applied in Wisconsin were all cases where the absent person was upon affectionate or at least friendly terms with the members of his family at the time he left home, with the single exception of *Ewing v. Metropolitan Life Ins. Co.* 191 Wis. 299, 210 N. W. 819, where there seems to have been some dissatisfaction with home conditions. But there was no such break in the home ties as is shown by the proof in this case. It is stated in the *Ewing Case* that it has been held that the presumption of death is not rebutted by proof that the absent person is a fugitive from justice. That statement was not essential to the decision. It was based upon a case which arose under a statute which made absence for seven years alone presumptive evidence of death. "The fact that the absent person is a fugitive from justice does not prevent the presumption from arising, but is admissible to rebut the presumption of death." 8 Ruling Case Law, pp. 708-9.

In the case at bar there is every reason to believe that the insured would not communicate with his family with whom his relations had been so strained as to cause him to leave

the family home, and as to cause the family to procure his arrest and conviction for the criminal offense of abandonment. Under such circumstances it cannot be said as a matter of law that one who had violated his probation would be likely to communicate with the members of his family whom he knew had caused his arrest and who would in all probability give to the police any information that they received concerning his whereabouts.

The proof did not warrant the court in finding as a matter of law that the insured was dead. The most that can be said is that the proof presented an issue of fact for the jury as to whether the insured was in fact deceased. It follows that the judgment must be reversed and a new trial ordered.

*By the Court.*—So ordered.

A motion for a rehearing was denied, with $25 costs, on April 2, 1929.