CASE 3—ACTION BY EDMONIA MARTIN AGAINST THE MUTUAL BENEFIT
LIFE INS. CO. ON A POLICY OF LIFE INSURANCE—MARCH 10.

## Mutual Benefit Life Insurance Co. v. Martin.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

APPEAL FROM FRANKLIN CIRCUIT COURT.

PRESUMPTION OF DEATH FROM ABSENCE—BURDEN OF PROOF—INSTRUC-
TIONS—GOING INTO PROHIBITED TERRITORY—WAIVER.

Held: 1. Kentucky Statutes, section 1639, which provides that, "if any
person who shall have resided in this State go from and do not
return to this State for seven successive years he shall be pre-
sumed to be dead in any case wherein his death shall come in
question, unless proof be made that he was alive within that
time," applies where the person leaving the State is absent for
seven consecutive years after he is last heard from; the burden
then being thrown on the other party to prove that the person
is alive.
2. The fact that a person who has been thus absent from the State
without being heard from for seven consecutive years is a fugi-
tive from justice, does not prevent the application of the statute
as a matter of law; but that fact is admissible in evidence to
rebut the presumption of death.
3. Under our system of trying cases, if there is any evidence in sup-
port of an issue, it must be submitted to a jury, and we think
it a sounder and better rule to leave the question of death, in all
these cases to be found by the jury on all the facts in the case.
4. In an action on a policy of life insurance it was error to instruct
the jury to find for plaintiff if they believed from the testimony

that insured had left the State more than seven years before the action was brought, and for seven years continuously had not returned to the State, or been heard from; but the court should have told the jury that the presumption of death arising from these facts, if they existed, might be rebutted by the proof, and that they should consider all the circumstances attending the departure of assured, and the reasons for his absence, if any, and that it was a question for them, on all the evidence, whether he was alive or dead when the suit was filed.

5. The court properly instructed the jury that the policy was not avoided by the insured going to China and Japan, even though in violation of the terms of the policy, the evidence being sufficient to show a waiver.

6. The policy was not forfeited by the temporary stay of insured in certain localities in which the policy prohibited him from residing.

7. The fact that the policy stipulated that, should the assured survive July 1, 1898, a fractional part of the policy should be payable to him, his executors and assigns, does not preclude the beneficiary, who, in the absence of the assured, has paid the premiums up to that time, from recovering the full amount of the policy upon the presumption of the death of the assured because of his absence from the State for seven years without being heard from, as the assured, should he turn out to be alive, would be estopped to make any claim under the policy.

8. The beneficiary lost no right by continuing to pay the premiums during the absence of the assured.

JOHN W. RODMAN AND DODD & DODD FOR APPELLANT.

1. Section 1639 of Kentucky Statutes, that provides the conditions upon which the death of any person will be presumed, after an absence of seven successive years, supersedes the common law. Sec. 233 Ky. Con.

2. Section 1639 of Kentucky Statutes does not, nor does the common law of presumptive death from seven years absence, apply to a fugitive from justice. 71 Fed. Rep., 258, N. W. Mut. Life Ins. Co. v. Stevens; 71 Fed. Rep., 258, Bankers' Life Ass'n v. Stevens; 19 Fed. Rep., 68, Sensenderfer v. Pac. Mut. Life Ins. Co.; 9 N. Y. Supp., 639, *In re* Miller's Estate; 73 Miss., 417, Manley v. Patterson (55 Am. State Reps., 543 and notes); 12 Mo. App., 413, Dickens v. Miller.

3. The rule that a man's death is to be presumed, after an interval of seven years since he was last heard of, admits of exceptions, and the court is bound to consider the circumstances of the particular case, in order to see whether the presumption fairly arises. 5 Irish Rep. Eq., 1, McMahan v. McElroy; 28 S. W. Rep.,

Mutual Benefit Life Ins. Co. v. Martin.

860 (Mo. Sup. Ct.), Flood v. Growney; 12 Mo. App., 413 Dickens v. Miller.

4. A person ought not to be presumed to be dead, from the fact of his not having been heard of for seven years, if the other circumstances of the case render it probable that he would not be heard of though living. 14 Simon's Rep., 28 (High Court Chancery) Watson v. England; 9 N. Y. Supp., 639, *In re* Miller's Estate; 12 Mo. App., 413, Dickens v. Miller.

5. A fugitive from justice is a person who has not the right of free locomotion, and any person relying on the death of such a person, has the burden of proving it, without the aid of any statute or the common law. 73 Miss., 417, Manley v. Patterson (55 Am. State Reps., 543); 9 N. Y. Supp., 639, *In re* Miller's Estate, and authorities therein cited).

6. A person who pays, or causes to be paid, all the premiums accruing or to accrue on a life insurance policy, in the absence of an allegation of mistake, is estopped from claiming that the assured was dead when such payments were made; and where such payments convert the policy from an ordinary life to an endowment policy, the death of the beneficiary in the converted policy can not be presumed, regardless of how long he may have been absent from the State and unheard of. 154 U. S. 38-51, Scott v. McNeal.

7. It is not competent for a State, by a law declaring a judicial determination that a man is dead, made in his absence, and without notice to or process against him, conclusive for the purpose of divesting him of his property, and vesting it in another, as same would violate the 14th amendment of the Federal Constitution. 1 Am. and Eng. Enc. of Law, 41, note 1 and cases therein cited in addition to the authorities hereinbefore cited.

IRA JULIAN, ATTORNEY FOR APPELLEE AND W. S. PRYOR OF COUNSEL.

1. The common law and statutory presumption of death, *prima facie*, apply to all unheard of absentees, fugitives from justice as well as others, because it is an arbitrary rule of *limitation*, based chiefly on grounds of public policy and not on probability of death. Eagle v. Emmet, 4 Bradford, N. Y., 117; Essay on Presumptions of Death, 2 Ky. Law Rep., 83; Hancock v. Ins. Co., 62 Mo., 34; Insurance Co. v. Stevens, 71 Fed. Rep., 258; Greenleaf on Evidence (Lewis' Ed.), vol. 1, sec. 41; Best on Presumptions, sec. 140; Bailey's Onus Probandi, p. 75; Am. & Eng. Enc. of Law, vol. 19, p. 46.

2. Acceptance of premiums, after knowledge of facts which forfeit the policy, is a waiver of the policy. Hence, instruction No. 4 was proper. Joyce on Insurance, vol. 1, sec. 542; Germania Ins.

Mutual Benefit Life Ins. Co. v. Martin.

Co. v. Rudgate, &c., 80 Ky., 223; Nat. Mut. Ben. Society v. Jones,
84 Ky., 110; Walsh v. Aetna Ins. Co., 30 Ia., 133.

If defendant desired to take precaution against possible action
of Tate's personal representative, after July, 1888, if alive at
that date, it should have raised the question of defect of parties
defendant, by plea or special demurrer in the circuit court, but
that question can not be urged for the first time in this court.
McAllister v. Savings Bank, 80 Ky., 684; Simrall v. City of Cov-
ington, 16 Ky. Law Rep., 770.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

On July 24, 1883, appellant issued a policy of insurance
on the life of James W. Tate, payable to his wife and chil-
dren at his death. The amount of the policy was $5,000,
and it was to be a paid-up policy after fifteen annual pay-
ments. On June 30, 1897, appellee, Edmonia Martin, filed
this suit to recover of appellant the amount of the policy,
alleging that she was the only surviving child of the in-
sured; that his wife was dead. She also averred that the
assured was dead, alleging that on the 16th of March, 1888,
he had left his home in Frankfort, Ky., and gone from the
State, and had not returned since,—a period of seven suc-
cessive years; that his relations to his family were always
pleasant and unusually happy, and there had been no cause
to change those relations; that he was last heard from on
December 12, 1888, and that his absence from the State
without being heard from had been continuous from that
time. Appellant filed an answer in which it denied that
the assured was dead. It alleged that for many years prior
to his leaving the State he had been Treasurer of the State
of Kentucky; that as such he had embezzled a large amount
of money belonging to the State, and in June, 1888, was
indicted for the crime of embezzlement; that on account of
this offense he had fled from the State, in the full vigor
of health, to avoid impending disgrace and punishment;

Mutual Benefit Life Ins. Co. v. Martin.

that he had since concealed himself to avoid arrest as a
fugitive from justice; that a reward of $5,000 had been of-
fered for his apprehension and delivery to the jailer of the
county, and that it was for this reason he had remained
absent from the State.  Appellant also relied on a clause
in the policy forbidding the assured to reside in certain
localities, claiming that thereby the policy had been for-
feited.  It was also stipulated in the policy that, should
the assured survive July 1, 1898, the amount of $2,000
should be payable to him, his executors and assigns.  Ap-
pellant alleged that the amount due on the policy was,
under this clause, payable to him or his assigns, and denied
for this reason all liability to appellee.  The issues formed
by the pleadings were submitted to a jury, who found for
the appellee, and judgment was entered by the court on
the verdict

The proof introduced on the trial substantially establish-
ed the facts alleged in the answer as to the circumstances
under which Tate left the State.  It also showed that he
was then fifty-seven years of age; that, after leaving the
State, he wrote to his wife and daughter regularly until
December, 1888.  The first of these letters was written
from British Columbia; the next from a steamer on the way
to Japan; several from Japan, where he seems to have re-
mained for some time, and then to have gone to China.  He
finally returned to Japan, and from there, in November,
1888, he came to Tacoma, Wash.  His last letter was writ-
ten from San Francisco, Cal., December 3, 1888.  In this let-
ter he speaks of having had a miserable cold; says he writes
a few lines as he passes along, and will write again in a
short time.  He was then, according to his letter, going
through California to the Territories, and said he would
write them where to address him.  After this he was not

heard of any more. He had written at regular intervals once or twice a month up to this time. His letters are full of affection for his wife, daughter and grandchild, and exhibit the most devoted family relationship. It further appears from them that he had lost considerably in weight since leaving home, and was anxiously hoping to be able to return. The proof also showed that very recently an elaborate effort had been made by Tate's friends to secure a pardon for him from the Governor; but the appellee testified that she had nothing to do with this, and then believed him dead. Appellee relied on section 1639, Kentucky Statutes, establishing a presumption of his death, entitling her to recover. That section reads as follows: "If any person who shall have resided in this State, go from and do not return to this State for seven successive years he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time." It is insisted for appellant that this statute has no application, because proof was made that the assured was alive up to December, 1888, and that the statute only applies where the person leaves the State, and does not return for seven successive years, and he is not shown to be alive after he left. We think this would be a narrow construction of the statute. If this is its meaning, it would not apply to any case where the party was heard from after he passed the borders of the State, though only the next day after his departure, as he was on his journey away. The common-law rule was that, after the lapse of seven years without intelligence concerning the person, the presumption of life ceased, and the burden of proof devolved on the other party to show that he was alive. 1 Greenl. Ev. section, 41. The statute must receive a reasonable construction with a view to promote its object. It

Mutual Benefit Life Ins. Co. v. Martin.

is necessary to have some period when the presumption of life ceases in this class of cases, and it seems to us a fair construction of the statute to apply it where the person leaving the State is absent for seven consecutive years after he is last heard from, and then to throw the onus of proving the person alive on the other party.

It is also insisted for the appellant that the statute only applies to those leaving the State who have no good reason for staying away, and that a fugitive from justice, for whose apprehension there is a reward of $5,000 outstanding, is not within its spirit or purpose. We are referred by counsel to some authorities sustaining this position, but, on investigation, we do not find the exact point to have been adjudicated. On the other hand, it is insisted for appellee that, if her father is not presumed dead now, she would have the same difficulty in suing on the policy ten years from now, and that this was the evil the statute was intended to remedy. The question is not free from difficulty, but we do not feel warranted in interpolating into a statute exceptions which it does not contain. Fugitives from justice are not the only class of persons who might have good reasons for not returning, and, if all these classes of persons were held not within the statute as a matter of law, its purpose, in many cases, would be entirely defeated. Under our system of trying cases, if there is any evidence in support of an issue it must be submitted to the jury, and we think it a sounder and better rule to leave the question of death in all these cases to be found by the jury on all the facts of the case. When the plaintiff shows that a resident of the State has been absent seven successive years from the time he left, or from the time he was last heard from, the burden of proof shifts to

the defendant to overcome the presumption of his death. This proof may be direct, or it may be circumstantial, arising from the circumstances under which the person left, his reasons for leaving, or concealing his whereabouts, his age, condition of health, his motives for not returning or keeping in communication with his home, and the like. In this case it was a question for the jury, on all the evidence, whether the assured, J. W. Tate, was alive or dead when the action was brought.

The court instructed the jury as follows: "If the jury believe from the testimony that the insured, J. W. Tate, while a resident of and living in Franklin county, Kentucky, left the State of Kentucky on the 16th day of March, 1888, and that for seven years continuously from the 3d day of December, 1888, nor since that time, has returned to the State or been heard from since December, 1888, they ought to find for the plaintiff." "The law presumes one dead who departs from the State, and is gone for seven consecutive years without returning, and has not been heard from since he left, unless it be shown that he has returned to the State or been heard from within that time, or at any time since, or that he was alive during that time." By these instructions the jury were, in terms, told to find for appellee if Tate had been absent from the State for seven years without being heard from since December, 1888. The question of whether he was in fact alive or dead was not submitted to the jury, nor were they authorized, by these instructions, to find for the appellant if they did not in fact believe him dead. Instead of the instructions we have quoted, the court should have told the jury that they ought to find for the plaintiff if they believed from all the evidence that Tate was dead on June 30, 1897; otherwise, for the defendant. The

court should also have told them that if Tate, while a res-
ident of Franklin county, Kentucky, left the State of Ken-
tucky on March 16, 1888, and that for seven years con-
tinuously from December, 1888, he had not returned to the
State or been heard from, the law presumed him dead,
unless it was shown that he was alive within that time;
but that such presumption (like that of innocence or
sanity) might be rebutted by the proof, and that the jury
should consider, in connection with this presumption, all
the circumstances shown by the evidence attending the
departure of Tate, and the reasons for his absence, if any;
and it was a question for them to determine on all the evi-
dence whether Tate was alive or dead when the suit was
filed.    The court properly instructed the jury as to the
policy not being avoided by Tate's going to China and
Japan as the evidence was sufficient to show a waiver; and
we are not inclined to think that Tate's stay in China and
Japan was longer than was warranted by the policy, which
substantially allowed him to go there temporarily.    The
court also properly refused to instruct the jury that ap-
pellee could not recover by reason of the provision of the
policy that $2,000 was to be paid J. W. Tate if he survived
July 1, 1898.    It appears that Tate had paid none of the
premiums on this policy since the year 1888, and that ap-
pellee has kept it alive by paying them.    She lost no right
by paying the full fifteen premiums, because she had to do
this, or risk losing the policy entirely, including all that
she had paid.    Tate by failing to pay his premiums, or ap-
prise appellant of his existence or make any demand of it,
has abandoned all claim under the policy, and, if he were
alive, or should hereafter turn out to be alive after pay-
ment of the policy by appellant to appellee, he would be
estopped to set up any claim against appellant.    But for

the error indicated in the instructions given by the court
the judgment is reversed, and the cause remanded for a
new trial and further proceedings not inconsistent with
this opinion.

Judge Paynter dissents.

Petition for re-hearing filed by appellee and overruled.