EGGER, Respondent, vs. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellant.

*December 11, 1930—January 13, 1931.*

For the appellant there was a brief by *Sam T. Swansen,* general counsel, and *Norman L. Baker,* assistant counsel, both of Milwaukee, and oral argument by *Mr. Baker.*

For the respondent there was a brief by *Churchill, Bennett, Churchill & Davis* of Milwaukee and *Caldwell & Burns* of Sioux Falls, South Dakota, and oral argument by *Clarence C. Caldwell.*

OWEN, J.    This action is brought to recover on a life insurance policy issued by the defendant upon the life of Godfrey H. Egger in which the plaintiff, his wife, is designated the beneficiary.   At the time of the issuance of the policy and up to the month of June, 1921, Godfrey H. Egger and the plaintiff lived together as husband and wife on a farm near the city of Sioux Falls, South Dakota, with seven children, the oldest then being seventeen years of age and the youngest three years of age.   In the early part of June, 1921, the exact date not appearing, Godfrey H. Egger left the farm and has not been seen or heard of since, except that, a few days after leaving, his wife received a letter from him stating that he was going to Elk Point, South Dakota, on a land deal and would not be home for two or three days.   A few days after, she received another letter from him stating he was never coming home and that he was going to London, England, and offering some advice with reference to the disposition of their property.   There were inclosures in this letter addressed to two of the children, enjoining them to be good, giving them his blessing, and expressing the hope that some day they would meet in

eternity. While it appears that his financial condition was much involved, it does not appear that he was a fugitive from justice. Before going, he executed conveyances in which he transferred all of his property to his wife and left them in his lock-box at the bank. Since the receipt of the above letters he has not been heard from by any of the members of his family, his friends or relatives.

The case was tried before the court. Findings of fact and conclusions of law were filed, in which it was found that Godfrey H. Egger was dead at the time of the commencement of this action and judgment rendered in favor of the plaintiff.

The appellant contends that the judgment should be reversed because the record furnishes no basis for the finding that Godfrey H. Egger was dead at the time of the commencement of this action. The respondent relies upon the case of *Ewing v. Metropolitan Life Ins. Co.* 191 Wis. 299, 210 N. W. 819, in which case the court applied the rule stated in 1 Greenleaf, Evidence, § 41, that "After the lapse of seven years, without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved on the other party. . . . It is sufficient if it appears that he has been absent for seven years from the particular state of his residence without having been heard from." That case furnishes some justification for the contention that mere absence from home without tidings for a period of seven years gives rise to a conclusive presumption of death no matter what the circumstances attending the leaving. The question, however, was again before the court in *Hansen v. Central Verein,* 198 Wis. 140, 223 N. W. 571. The contention upon the facts involved in that case, that the absentee should be held as a matter of law to be dead because his family had not heard from him for more than seven years, was a challenge to reason and common sense. The absentee had deserted his family and he

was under sentence for abandonment as the result of a prosecution instituted by his own family. It seems unlikely that he would have written to them under the circumstances, and a presumption of his death because his family had not heard from him for a period of seven years rested upon rather frail support in reason. The authorities were again reviewed, and while it was found that the rule as stated by Greenleaf had been early adopted and consistently followed in the decisions of this court, the further fact was disclosed that this court had never been called upon to say whether the presumption obtained in cases where the absentee left under circumstances which would negative the existence of the usual and natural human instinct to communicate with one's family until the decision in the *Ewing Case,* where the rule as stated by Greenleaf and often quoted by this court was followed on the theory of *stare decisis* and without the close consideration that was accorded to the question in *Hansen v. Central Verein,* 198 Wis. 140, 223 N. W. 571. As a result of our deliberations in connection with the *Hansen Case,* we not only became convinced that the statement made by Greenleaf that the presumption of life ceases·after the lapse of seven years without intelligence from the absent one has no foundation either in reason or authority, but that it is doubtful whether Greenleaf intended the language used by him to be a careful and inclusive statement of the rule, as in his foot-note to the statement he quotes from Stephen's Digest of Evidence, art. 99, as follows: "A person shown not to have been heard of for seven years by those (if any) who if he had been alive would naturally have heard of him, is presumed to be dead unless the circumstances of the case are such as to account for his not being heard of without assuming his death." This is quite a different rule from the one stated by Greenleaf. It requires as a premise the existence of those who would nat-

urally have heard from him if he had been alive; also, the absence of circumstances to account for his not having been heard from without assuming his death. As stated by Stephen, the rule has the support of reason; as stated by Greenleaf, it does not.

A presumption is variously defined as "a deduction which the law expressly directs to be made from particular facts," and as "consequences which the law or the judge draws from a known fact to a fact unknown;" or "an inference as to the existence of a fact not actually known, arising from its usual connection with another which is known;" or "a rule of law that courts and judges shall draw a particular inference from particular facts, or from particular evidence, unless and until the truth of the inference is disproved." 1 Jones, Commentaries on Evidence (Horwitz) § 9. So the law says that because there is an instinct implanted within the human breast which urges one who is absent from his home or family to communicate with them, his absence from home for a period of seven years without such communication raises a presumption of death. This presumption is based on this natural human instinct which normally and generally obtains. Where, however, it is shown that this instinct has been destroyed or does not exist, the foundation upon which this presumption rests is much disintegrated.

It is known to all that at times love is transformed into hate, and that men leave their families with the intention never to communicate with them again. Under such circumstances the law cannot say that because the absentee has not been heard from he must be dead, or that if he were alive he would certainly have communicated with his family. It may be that the legislature can so prescribe, and in many states we find statutes to the effect that one who has been absent from his home for seven successive years shall be

presumed to be dead. There is something to be said in favor of this rule, in that it is a rule of certainty and tends to the settlement of men's affairs. It is a rule of repose, but necessarily arbitrary in character, somewhat like the statute of limitations. It is a rule to be adopted by the legislative branch of the government rather than by the courts, as presumptions declared by the courts should have the support of reason and human experience. It is beyond the legitimate functions of courts to prescribe arbitrary rules upon which human and property rights must depend. But such statutes have not always been given their full effect. They have been construed in harmony with the common-law rule as stated by Stephen. *Burnett v. Costello,* 15 S. Dak. 89, 87 N. W. 575; *Wright v. Jones,* 23 N. Dak. 191, 135 N. W. 1120; *Mutual Benefit Life Ins. Co. v. Martin,* 108 Ky. 11, 55 S. W. 694. It seems clear that under the circumstances of this case no presumption of death arises which removes the question from the realm of fact. The manner of and the circumstances under which he left makes it doubtful whether his family would have heard from him even if he were alive.

It is not very clear whether the presumption we are discussing is one of fact or law. It has been said to be a presumption of both fact and law. No doubt in a clear case it becomes in effect a presumption of law. Where the seven years' absence is shown, and no reason appears why the absent one would not communicate with his family if he were alive, and there is no other evidence to establish either life or death, it is no doubt the duty of the court to direct a verdict on the theory that the absent one is dead. *Page v. Modern Woodmen of America,* 162 Wis. 259, 156 N. W. 137. Where, however, the evidence is ambiguous and throws doubt upon the probability of whether the family would have heard from the absent one even if he were alive, then a different question is presented. One view of such sit-

uation might be that no presumption of death arises at all. Such seems to be the view taken by the court in the *Matter of Board of Education of New York,* 173 N. Y. 321, 66 N. E. 11, where it was said: "It will thus be seen that while death must be proved it may be established by presumption as well as by direct evidence. But facts must be disclosed which would raise such presumption. A person may be absent and unheard of by his friends for seven or more years, under circumstances in which no presumption of death would attach." But the general rule seems to be that the presumption is one which varies in weight according to the circumstances. 1 Jones, Commentaries on Evidence (Horwitz) § 61*a*. Courts generally submit all of the facts to the jury together with proper instructions in elucidation of the presumption. The opinion in *Matter of Board of Education of New York, supra,* quotes from Best on the Law of Evidence as follows: "The death of any party once shown to have been alive is matter of fact to be determined by a jury; and as the presumption is in favor of the continuance of life, the onus of proving the death lies on the party who asserts it." This question is discussed in *Mutual Benefit Life Ins. Co. v. Martin,* 108 Ky. 11, 55 S. W. 694, where a statute of the state providing that one who has been absent from the state for seven successive years shall be presumed to be dead, was involved. In that case it was said that the trial court should have instructed the jury "that if Tate, while a resident of Franklin county, Kentucky, left the state of Kentucky on March 16, 1888, and that for seven years continuously from December, 1888, he had not returned to the state or been heard from, the law presumed him dead, unless it was shown that he was alive within that time; but that such presumption (like that of innocence or sanity) might be rebutted by the proof, and that the jury should consider, in connection with this presumption, all

the circumstances shown by the evidence attending the departure of Tate, and the reasons for his absence, if any; and it was a question for them to determine on all the evidence whether Tate was alive or dead when the suit was filed."

Upon reflection, the result appears to be the same for practical purposes whether we say that no presumption arises except in cases of unambiguous circumstances or whether we say that the presumption varies in weight according to the circumstances. In either event, a question for the jury seems to be recognized by all courts, and it is for the jury to determine under all the circumstances whether the absent one is dead or alive. Where the circumstances are unambiguous, and there is no way to account for the absent one not having been heard of without assuming his death, then the presumption is conclusive of his death. Where the circumstances of his leaving are ambiguous and cast doubt upon the probability of his communicating with his family even though he be alive, then it is for the jury to say whether under the circumstances he would naturally communicate with his family, relatives, or friends if he were alive. In the one view, the jury is to determine whether the presumption prevails. In the other, it is for them to determine whether under all the facts and circumstances of the case the absent one is dead or alive. No matter what the philosophic reasoning may be, the result is the same, in that a jury question is presented.

While the court may direct a verdict establishing the death of the absent one where the circumstances are unambiguous, where the circumstances under which one leaves his home are ambiguous and cast doubt upon the probability of his communicating with his family even though he be alive, it must in nearly all instances give rise to a question of fact to

be determined by the jury. A man may leave his home declaring that his family will never hear from him again. This certainly renders his communication with his family less probable than if he had left under normal circumstances. But different minds may draw different inferences as to whether even under such circumstances the mellowing influence of seven years would not be sufficient to bring about a mollification of his attitude so that natural human instincts would prevail and prompt him to communicate with his family. Where different inferences may be drawn by different persons from conceded facts, a jury question is presented. *Porter v. Industrial Comm.* 173 Wis. 267, 181 N. W. 317. If this case had been tried before a jury we think it would have presented a jury question. By the same token it presented a question of fact for the decision of the court. A perusal of the opinion of the trial judge indicates that he considered the evidence with a correct understanding of the law in mind. He expressed the belief that "the seven years of absence would be more than a sufficient length of time to give an opportunity to those forces which are so potent to operate upon the natural leanings and dispositions of the father to re-establish communication with those who were the objects of his concern and love." It thus appears that upon a consideration of all the evidence, weighed in the light of a correct understanding of the law, the trial judge came to the deliberate conclusion that Godfrey H. Egger was dead at the time of the commencement of this action. We think this finding cannot be disturbed, and that the judgment must be affirmed.

This conclusion makes it unnecessary for us to consider whether the policy in question was a Wisconsin or South Dakota contract, and whether the law of South Dakota or Wisconsin, so far as it relates to the presumption of death

338

we have discussed, should be applied, as there is no difference in the character of the presumption as we now construe it and as construed in South Dakota. *Burnett v. Costello,* 15 S. Dak. 89, 87 N. W. 575; *Wright v. Jones,* 23 N. Dak. 191, 135 N. W. 1120.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J., took no part.