Estate of Langer: Novy, Appellant, vs. Langer, Respondent.

*September 16—October 12, 1943.*

*Lorin L. Kay* of Richland Center, for the appellant.
*Harry T. Jordan* of Hillsboro, for the respondent.

BARLOW, J.   Appellant questions the jurisdiction of the county court to grant administration upon the ground that the evidence fails to show that Frank A. Langer is deceased, and for the further reason that if he is deceased he was not a resident of Vernon county at the time of his death.

The first question to be determined is whether Frank A. Langer is dead.   It is undisputed that he left Vernon county on June 23, 1925.   His parents and sister lived in Vernon county for a number of years, and he was on friendly terms with them and was at their home the day before he left.   Frank A. Langer was unmarried and his parents and sister were the natural persons with whom he would communicate.   They did not see him or hear from him at any time between June 23, 1925, and April 15, 1941, when petition was made for administration of his estate.   After Frank A. Langer disappeared, members of the family made an effort to locate him.   When they received information that he had been in La Crosse they went to La Crosse and searched for him.   Later it was thought that he might be at the Mendota hospital, and the relatives made a trip to Mendota, but failed to find him.   In 1926 they caused a notice of disappearance to be published in the Badger

Legionnaire, and a second notice was published in the same periodical in 1927. In 1927 they had a notice of disappearance published in the "Port of Missing Men." In 1936 they wrote to the Veterans' Administration to see if he had applied for his bonus. He had made no application. They obtained from the secretary of state of the state of Minnesota a list of persons to whom automobile licenses had been issued in the name of Frank A. Langer. There were five such persons and members of the family saw each one of them personally. They attempted to locate him through the automobile license division of the states of Wisconsin, Minnesota, Michigan, and the Dakotas, and contacted all persons by the name of Frank Langer to whom licenses had been issued in those states. They attempted to locate Frank Langer by radio broadcast in 1937 for three successive days, stating that his mother was sick and wanted to see him. They heard about a Frank Langer at Spring Valley, Wisconsin, and went to see him, but he was not the person they were looking for. They wrote to postmasters at various points and other officials where they felt they might obtain information about him, but without success.

In opposition to this there is the testimony of one witness who claims to have seen Frank Langer in an automobile on the highway ten to fifteen miles west of Winona, Minnesota, during the month of August, 1927. The testimony was that he was in the rear seat of a closed car. The witness did not talk with him, but claims to have waved at him. The witness Ira Casperson testified that in August, 1939, he was driving in the business section of the city of La Crosse and passed Langer, who was driving in the opposite direction, and that he had no opportunity to speak to him, and also testified that ten days or two weeks later he passed Langer on a highway between Winona and La Crosse, Langer driving toward Winona. He did not have an opportunity to speak to him at that time. After the report that Langer had been seen in southern Minnesota, the relatives made a trip through south-

ern Minnesota, stopping at garages, oil stations, and various places making inquiry about Langer or any person answering his description, but failed to find him. Another witness testified that on January 15, 1941, he met Langer in Adams, Wisconsin; that he talked with him not to exceed one minute, and that the only subject discussed was the address of the witness' daughter. The witness knew that Langer had not been seen since 1925, but did not communicate with the relatives of Langer.

In addition to this, appellant claims that the conditions under which Langer left preclude any likelihood of his communicating with anyone or returning. Stress is placed on the amount of indebtedness, and upon analysis we find that Casperson foreclosed his chattel mortgage and obtained the security for his obligation; $5,800 was due the father, who was on friendly terms with the debtor; this leaves a balance of $3,600 principal due to friends.

It is also contended that Langer departed in an automobile that was mortgaged to Casperson, and was therefore criminally liable. The evidence does not sustain this contention. The record shows that the automobile was taken in on a trade in May, 1941, after the Casperson mortgage had been given.

The trial court held that the evidence was sufficient to establish the presumption of death after seven years' absence.

In *Egger v. Northwestern Mut. Life Ins. Co.* 203 Wis. 329, 234 N. W. 328, the court fully sets forth the law in Wisconsin on the question of the presumption of death after seven years' absence without being heard from, and concludes that it is a question of fact for the jury or court trying the issue whether the absent one is dead or alive.

If there were no other evidence in the case except the absence of the party for nearly sixteen years without being heard from by his parents or his sister living in Vernon county, the presumption would necessarily follow that the person is dead. *Page v. Modern Woodmen of America,* 162 Wis. 259, 156

N. W. 137. The relatives made every reasonable effort to locate their son and brother over a period of years. While it is unnecessary to show diligent search as a condition precedent to a presumption of death after seven years, a diligent search may strengthen it. *Ewing v. Metropolitan Life Ins. Co.* 191 Wis. 299, 210 N. W. 819; *Delaney v. Metropolitan Life Ins Co.* 216 Wis. 265, 257 N. W. 140.

There is no claim that a wrong rule of law was applied. The trial court heard the testimony and observed the witnesses, and from this determined the question of fact. It is a familiar rule that the decision of the trial court is not to be set aside unless we are certain that the decision was clearly wrong. *McKnelly v. Brotherhood of American Yeomen,* 160 Wis. 514, 152 N. W. 169; *Slam v. Lake Superior T. & T. R. Co.* 152 Wis. 426, 140 N. W. 30. The conclusion of the trial court is approved.

Appellant also raises the question of the residence of deceased, and jurisdiction to grant administration for this reason. The petition sets forth that deceased was a resident of Vernon county, and the evidence shows that when he returned from military service he returned to Vernon county and was employed there for a number of years, and that for approximately two months prior to the time that he left he was engaged in the garage business at Viola, Wisconsin, which is partly in Vernon county. Any property that he had consisted of the interest in his uncle's estate, which was in Vernon county. No testimony was offered to show that he established a residence or domicile in any other county. Counsel reasons that he was seen in La Crosse county after leaving Vernon county, but this is no proof that he established a residence there. It is a fundamental law that a domicile once established continues until it is superseded by a new domicile. Restatement, Conflict of Laws, p. 47, sec. 23; 1 Beale, Conflict of Laws, p. 181.

The evidence is sufficient to sustain a finding that deceased was a resident of Vernon county at the time he left the county and that his residence continued there for the purpose of administration of his estate. To hold otherwise would void the purpose of the law. The presumption of death after an unexplained absence for a specified number of years is a common-law rule which has been affirmed in some form or other in nearly every state. Its purpose has been to complete the chain of title to property and administer estates so that business may carry on. Proof of residence necessary to grant administration is established.

*By the Court.*—Order affirmed.