SWENSON and another, Respondents, vs. KANSAS CITY LIFE INSURANCE COMPANY, Appellant.*
SAME, Respondents, vs. BANKERS LIFE COMPANY, Appellant.

*January 16—February 13, 1945.*

* Motion for rehearing denied, with $25 costs, on May 1, 1945.

For the appellants there was a brief by *Atwell & Atwell* of Stevens Point, and oral argument by *W. E. Atwell.*

For the respondents there was a brief by *Fisher, Reinholdt & Peickert* of Stevens Point, and oral argument by *W. E. Fisher.*

MARTIN, J.   The plaintiff Clara O. Swenson and Arthur V. Swenson were married in October, 1917.   He was then in the army, later went overseas and returned in 1919, locating at Wisconsin Rapids, where they resided until moving to Stevens Point in 1925.   They lived together with their family at Stevens Point until August 15, 1935, the date of Mr. Swenson's disappearance.   At the time of his disappearance the family included five children, the oldest a girl of seventeen years and the youngest a girl of ten years.   The family had always been together since Mr. Swenson's return from overseas and had been continuously maintained and supported by him.   The family relationship had always been agreeable. The family belonged to the same church and attended church services together.   Mr. Swenson had never been away from the family for any extent of time.   He was fond of his children and often took the family on auto trips.   There was no trouble in the family at the time of his disappearance.

Defendants in their respective answers, by way of an affirmative defense, allege :

"That at the time of the disappearance of the said Arthur V. Swenson he was alleged to have absconded with funds of his employer, and to have unlawfully stolen and taken with him an automobile belonging to another.

"Said defendant denies that the said Arthur V. Swenson is now dead, and requires that the plaintiffs be put upon proof as to such fact."

It appears that Mr. Swenson was employed by Albert Paulson of Marshfield, Wisconsin, who was engaged in the automobile and garage business in both Stevens Point and Marsh-

field. Mr. Swenson operated the automobile and garage business at Stevens Point; Paulson personally conducted the business at Marshfield. Mr. Paulson testified that Swenson had done double financing on some cars; that there was between $25,000 and $30,000 involved in such double financing; that a conference was arranged for August 15, 1935, at Stevens Point, at which were present two or three representatives from the Associates Investment Company, Attorney Williams of Marshfield, Mr. Paulson, and Mr. Swenson; that at this conference Swenson was accused of double financing cars; that he thereupon left the conference, stating that he would be gone a minute; that upon leaving the conference he took an automobile belonging to one Lester Smart, an employee of the garage.

Mr. Swenson then drove to his home, told his wife he was going to Marshfield on business. She suggested going with him, whereupon he replied that he thought it would be late before he returned home and that she had better stay with the children. That was the last time Mrs. Swenson saw him. On August 16, 1935, Lester Smart caused a warrant to be issued charging:

"That on the 15th day of August, A. D. 1935, at the city of Stevens Point, county of Portage and state of Wisconsin, Arthur V. Swenson did one Pontiac sedan automobile of the goods and chattels of the said Lester Smart of the value of $878 then and there found, feloniously take, steal and carry away, contrary to the provisions of section 343.17 of the Wisconsin Statutes."

The car was never recovered, and there was no evidence as to what search, if any, was made to locate Swenson and place him under arrest.

Six witnesses testified to having seen Swenson at different times and places subsequent to his disappearance within the seven-year period prior to the commencement of these actions. Several of these witnesses testified to having been acquainted

with Mr. Swenson for a number of years and some of them had had business transactions with him. Respondents contend that they were cases of mistaken identity, and that, in any event, whether they saw Swenson at the times and places testified to was a question of fact for the jury.

Our main difficulty with the case is occasioned by the form of the verdict submitted. All the evidence was directed to the main issue, whether Swenson was seen alive after his disappearance and within seven years prior to the commencement of these actions. The verdict assumes the facts on which a presumption of death arises. Under the verdict as phrased, the jury might well have concluded that even though Swenson disappeared under ambiguous circumstances there was, nevertheless, at the expiration of seven years from the date of his disappearance, a presumption of his death. Such conclusion would be erroneous. If Swenson was seen or heard from within the seven years prior to the commencement of these actions, there is no presumption of death; and if it be found that he was seen or heard from within the seven years, the actions would fall.

The issue should have been submitted by a question to the following effect: Has insured, Arthur V. Swenson, been seen or heard from within seven years prior to the commencement of these actions? In the event that this question be answered in the negative, a second question, to the following effect, should be submitted: Did insured, Arthur V. Swenson, disappear under circumstances such that he would be unlikely to communicate with his family, relatives, and friends, if alive? If this question be answered in the negative, the presumption of death would be conclusive, and plaintiff would prevail. But if the question were answered in the affirmative, the presumption of death would be destroyed, and the actions would fall. The plaintiff's actions are grounded entirely on the presumption of death. There are no other facts and cir-

cumstances disclosed by the evidence that would sustain a finding of death.

In *Egger v. Northwestern Mut. Life Ins. Co.* 203 Wis. 329, 336, 234 N. W. 328, the court said:

"Where the circumstances [of the disappearance] are unambiguous, and there is no way to account for the absent one not having been heard· of without assuming his death, then the presumption is conclusive of his death. Where ιthe circumstances of his leaving are ambiguous and cast doubt upon the probability of his communicating with his family even though he be alive, then it is for the jury to say whether under the circumstances he would naturally communicate with his family, relatives, or friends if he were alive. In the one view, the jury is to determine whether the presumption prevails. In the other, it is for them to determine whether under all the facts and circumstances of the case the absent one is dead or alive."

If, upon a retrial of the actions, evidence should be adduced that would support a finding of the insured's death prior to the commencement of these actions, without the aid of any presumption, an additional question covering that specific issue should be included in the verdict.

For the reasons stated, we are of the opinion that the issues were not properly submitted to the jury; that a new trial of the actions must be had; and the costs should be left to abide the final outcome.

*By the Court.*—Judgments reversed. Causes remanded with directions to vacate and set aside the verdict and granting a new trial; costs to abide the final outcome; respondents to pay the clerk's fees on this appeal.