Wendy GAVERS, Rita Gavers, John J. Gavers, infants, by their Guardian ad Litem, Eugene A. Gavers, individually and as assignees of John J. Gavers, Sr., Plaintiffs-Respondents,

v.

FEDERAL LIFE INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 83–721. Submitted on briefs December 20, 1983.—Decided February 22, 1984.*
(Also reported in 345 N.W.2d 900.)

For the defendant-appellant, the cause was submitted on the brief of *Lisle W. Blackbourn* of *Godfrey, Pfeil & Neshek, S.C.* of Elkhorn.

For the plaintiffs-respondents, the cause was submitted on the brief of *Robert C. Knight* of Williams Bay.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.   This is a conflict of laws case in which the trial court, in a nonfinal order,[1] determined that California rather than Wisconsin law should govern a presumption of death question. Because we conclude that California has no substantial connections with the facts, we reverse.

The Gavers children, as assignees of their father, John J. Gavers, Sr., brought this action to recover on a policy of life insurance issued by the Federal Life Insurance

[1] This court granted a petition for leave to appeal a nonfinal order of the circuit court on June 13, 1983 pursuant to sec. 808.03 (2), Stats.

Company insuring the life of their mother, Alice Mary Gavers. John is the named beneficiary of the policy. Because Alice had departed from Wisconsin in 1968 and apparently arrived in California, Federal Life requested the trial court to determine whether Wisconsin or California law should apply to the presumption of death issue. The trial court determined that California law applied, and Federal Life appeals.

On August 9, 1965, Federal Life issued its policy insuring the life of Alice and naming her husband John as primary beneficiary. On August 5, 1968, John and Alice had an argument in which John allegedly struck Alice, provoking her to leave their home. She departed with only a clutch purse and the clothes on her back. Shortly before her departure, Alice had befriended another woman from California with whom she had made plans to travel to California. Alice had tried, without success, to persuade John to move to California with her.

It was eventually discovered that Alice had purchased a one-way bus ticket to the Los Angeles area shortly after she left her home. Travelers checks were cashed by Alice in the Los Angeles area on August 15, 1968. She has not been seen or heard from since.

The insurance policy was issued through Federal Life's Wisconsin offices. It insured the life of a Wisconsin resident and named Wisconsin residents as primary and contingent beneficiaries. All premiums were paid in the state of Wisconsin. All beneficiaries remain Wisconsin residents.

Federal Life's independent investigation revealed no evidence in California of Alice registering to vote, applying for a driver's license, owning or renting property, maintaining bank accounts, attending any schools or applying for credit, employment or public assistance.

The threshold determination in a conflict of laws case is whether a genuine conflict exists. If so, an application

of the choice-influencing considerations[2] should proceed unless it is decided that application of any of the multiple choices of law would constitute mere "officious intermeddling." *Hunker v. Royal Indemnity Co.*, 57 Wis. 2d 588, 598, 204 N.W.2d 897, 902 (1973).

The rule regarding presumption of death in Wisconsin was initially set forth in *Cowan v. Lindsay*, 30 Wis. 586, 589 (1872), adopting 1 Greenleaf, Evidence § 41, (12th ed. 1866), which states:

"Where the issue is upon the *life* or death of a person, once shown to have been living, the burden of proof lies upon the party who asserts the death. But after the lapse of seven years, without intelligence concerning the person, the presumption of life ceases, and the burden of proof is devolved on the other party." [Emphasis added.]

*Cowan* further held that absent testimony tending to prove the absentee was still alive, death became a "verity." *Id.* at 590.

In order for the presumption of death to apply, it is *not* incumbent that the party seeking to prove death engage in a diligent search for the missing person. *Miller v. Sovereign Camp Woodmen of the World*, 140 Wis. 505, 507–08, 122 N.W. 1126, 1128 (1909). A diligent search may, however, strengthen the presumption. *Estate of Langer*, 243 Wis. 561, 567, 11 N.W.2d 185, 187 (1943). It is not necessary that the reasons for the departure be unexplained in order to raise the presumption of death.

---

[2] The choice-influencing considerations as set forth in Leflar, *Choice-Influencing Considerations in Conflicts Law*, 41 N.Y.U.L. Rev. 267, 282 (1966), and as adopted in *Heath v. Zellmer*, 35 Wis. 2d 578, 596, 151 N.W.2d 664, 672 (1967), are as follows:

1) Predictability of results;
2) Maintenance of interstate and international order;
3) Simplification of the judicial task;
4) Advancement of the forum's governmental interests;
5) Application of the better rule of law.

*Ewing v. Metropolitan Life Insurance Co.,* 191 Wis. 299, 300, 210 N.W. 819, 819 (1926). Under certain circumstances, however, a jury question is presented as to whether the presumption is rebutted. *Hansen v. Central Verein der Gegenseitigen Unterstuetzungs Gesellschaft Germania,* 198 Wis 140, 145, 223 N.W. 571, 573 (1929).

In *Egger v. Northwestern Mutual Life Insurance Co.,* 203 Wis. 329, 234 N.W. 328 (1931), the supreme court reviewed the evolution of the law governing presumption of death in Wisconsin and concluded that it fell into two categories: (1) an explained absence which casts doubt on the probability of the missing person contacting others resulting in a jury question as to whether the missing person is dead, or (2) an unexplained absence which shows a probability that the missing person would have communicated with others resulting in a conclusive application of the presumption. *Id.* at 336, 234 N.W. at 330. In the foregoing situations, the *Egger* court held that it made no practical difference whether the presumption does not arise or whether it simply varies in weight according to circumstances because the result in both is that a jury question is presented. *Id.*

We conclude that the presumption applies in all cases of seven years' absence without intelligence concerning the missing person. The attendant facts and circumstances will determine the weight the presumption is accorded and whether the question of death is a factual issue (an explained absence) or conclusive as a matter of law (an unexplained absence). In any event, it is not necessary to show a diligent search has been made in order for the presumption to apply. *Langer,* 243 Wis. at 567, 11 N.W.2d at 187.

The California rule is governed by statute. Cal. Evid. Code, § 667, states: "A person not heard from in seven years is presumed to be dead." The court in *In re Estate*

*of Bassi,* 44 Cal. Rptr. 541, 552 (Cal. Ct. App. 1965), termed the presumption as a "disputable presumption." The California courts have also placed reliance upon the rules stated by Professor Greenleaf. *Id.* at 553. Depending upon the circumstances, California may require that a diligent effort be made to locate the absentee before the presumption can apply.[3] *Id. See also* Annot., 99 A.L.R.2d 307 (1965).

Thus, we conclude that an arguable conflict exists between Wisconsin and California law as to the need in a given case for a diligent search.

Ordinarily, we would then proceed to conduct a detailed qualitative analysis of the conflict question and apply the choice-influencing considerations set forth in *Conklin v. Horner,* 38 Wis. 2d 468, 478, 157 N.W.2d 579, 583 (1968). In certain instances, however, the contacts of one state to the facts of the case are so obviously limited and minimal that the detailed conflicts analysis under *Conklin* is not necessary. *See Hunker,* 57 Wis. 2d at 598, 204 N.W.2d at 902.

Alice's contacts with California, as indicated by the facts of this case, consist only of circumstantial evidence that she arrived there and direct evidence that she expressed a desire to go there. No evidence exists that Alice remained in California. These limited contacts do not warrant the application of California's presumption of death law. To do so would allow California to "officiously intermeddle" in a case in which it has little or no interest. *Hunker* at 598, 204 N.W.2d at 902. A court "must make its selection from 'among rules that are supposed to have tangible existence in states substantially

---

[3] We appreciate that our interpretation of the California law disagrees with that asserted by Federal Life.

connected with the facts.' " *Id.* at 599, 204 N.W.2d at 903. (Citation omitted.) The law presumes that forum law should apply unless it becomes clear that nonforum contacts are of greater significance. *Wilcox v. Wilcox,* 26 Wis. 2d 617, 634, 133 N.W.2d 408, 416 (1965). It is cautioned, however, that this is a "weak" presumption and serves only to state the benchmark from which a conflict analysis must begin. *Zelinger v. State Sand & Gravel Co.,* 38 Wis. 2d 98, 106, 156 N.W.2d 466, 469 (1968) ; *Hunker* at 599, 204 N.W.2d at 902. This "weak" presumption applies :

unless it appears that the forum state's policies are unaffected by using a nonforum rule, *or unless the facts show that the contacts with the tort are so minimal that the use of forum law would be clearly the result of interloping chauvinism.* [Emphasis added.]

*Conklin,* 38 Wis. 2d at 475 n. 2, 157 N.W.2d at 582 n. 1.

The facts in this case lead us to conclude that application of California law would constitute nothing more than officious intermeddling condemned by *Hunker.* We, therefore, reverse and remand to the trial court with instructions that it apply Wisconsin law on this issue in further proceedings.

*By the Court.*—Order reversed and remanded.