## CONSOLIDATED PAPERS, INC. and Arkwright-Boston Manufacturing Mutual Life Insurance Company, Plaintiffs-Appellants,†

v.

## DORR-OLIVER, INC., Defendant-Respondent.

Court of Appeals

*No. 89–0395. Orally argued August 4, 1989.—Decided December 7, 1989.*

(Also reported in 451 N.W.2d 456.)

---

†Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiffs-appellants there were briefs by *Robins, Kaplan, Miller & Ciresi,* by *Thomas L. Hamlin, John C. Knoepfler* and *James P. Coy,* of Minneapolis, Minnesota, and *Brazeau, Potter, Wefel & Nettesheim,* by *Nicholas J. Brazeau,* of Wisconsin Rapids, and oral argument by *Robins, Kaplan, Miller & Ciresi,* by *John*

*C. Knoepfler,* of Minneapolis, Minnesota, and *Brazeau, Potter, Wefel & Nettesheim,* by *Walter G. Wefel,* of Wisconsin Rapids.

For the defendant-respondent there were briefs and oral argument by *Anderson, Shanon, O'Brien, Rice & Bertz* by *Russell T. Golla,* of Stevens Point.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. Consolidated Papers, Inc., and Arkwright-Boston Manufacturing Mutual Life Insurance Company ("Consolidated") appeal from a summary judgment dismissing their claims against Dorr-Oliver, Inc. They allege that Dorr-Oliver is liable under various theories for the failure of a white liquor clarifier, a machine Dorr-Oliver sold to Consolidated.

We deem the issues to be whether (1) Dorr-Oliver made factual misrepresentations regarding the clarifier; (2) Dorr-Oliver's warranty provisions were part of the contract of sale; and (3) any implied warranty of merchantability is inconsistent with an express warranty of freedom from defects that excludes corrosion as a defect.[1]

We conclude that Consolidated alleges no misrepresentation of fact, the warranty provisions were part of the contract, and an express warranty of freedom from defects precludes coverage of corrosion-related problems

---

[1]Consolidated is a Wisconsin corporation. Dorr-Oliver is a foreign corporation. Neither party discusses which state's laws apply to the issues. For that reason, we assume that no conflict exists between the laws of this state and those of any other state having substantial contacts with the events in this case. *See Gavers v. Federal Life Ins. Co.,* 118 Wis. 2d 113, 115, 345 N.W.2d 900, 901 (Ct. App. 1984) (threshold determination in conflict of laws case is whether a conflict exists). We apply the law of Wisconsin.

591

under any implied warranty which may exist. We therefore conclude the trial court properly granted summary judgment dismissing all claims against Dorr-Oliver and affirm the judgment.

## 1. BACKGROUND

Consolidated manufactures paper. It produces its own wood pulp using equipment and chemicals to break down the fibers in wood chips. The process involves "white liquor" which must be separated from wood solids. The separation process requires a "white liquor clarifier mechanism," such as the one Dorr-Oliver sold to Consolidated in January 1980.

The clarifier consists of two horizontal rake arms thirty feet long with attached blades, a vertical motor-driven center shaft, a feedwell, a center scraper, and support trusses. The rake arms and blades were made of carbon steel. The arms extend across the sixty-foot diameter of the tank in which the white liquor is separated from the wood solids. The arms operate completely submerged in the liquid and solids. The clarifier failed on December 13, 1984 when the rake arms, thinned by corrosion, wrapped around the center shaft, rendering the clarifier useless.

The failure damaged no property other than the clarifier itself. However, Consolidated claims damages for economic losses incurred because of the failure, including $90,414 to replace the mechanism and $246,934 to purchase paper pulp to make up for lost production while the clarifier was not operating.

Consolidated and its insurer pleaded separate claims against Dorr-Oliver for damages arising out of negligent design and manufacture, negligent misrepresentation, strict responsibility for misrepresentation, breach of express warranty, and breach of implied warranties.

Dorr-Oliver moved for summary judgment dismissing each claim, the trial court granted the motion, and this appeal resulted. Appellants raise no issue on appeal regarding dismissal of the negligent design and manufacture claim.

## 2. MISREPRESENTATION

Summary judgment is governed by sec. 802.08, Stats. The methodology for reviewing summary judgment motions has been stated in many cases, such as *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980), and need not be repeated. Our review is *de novo* and independent of the trial court's decision. *Id.*

To establish a claim for both negligent misrepresentation and strict responsibility for misrepresentation the plaintiff must show that the defendant made a representation of fact, that the representation was untrue, and that the plaintiff believed the representation and relied upon it to his or her detriment. *Reda v. Sincaban,* 145 Wis. 2d 266, 268–69, 426 N.W.2d 100, 102 (Ct. App. 1988); *Costa v. Neiman,* 123 Wis. 2d 410, 415, 366 N.W.2d 896, 899–900 (Ct. App. 1985).[2]

The complaint alleges that Dorr-Oliver represented to Consolidated that Dorr-Oliver would design, engineer, and build a white liquor clarifier that would meet the

[2]These are not the only necessary showings. To support a negligent misrepresentation claim, the plaintiff must also show that the defendant was negligent in making the representation. *Costa* at 415, 366 N.W.2d at 900. To support a strict responsibility claim, the plaintiff must also show that the defendant made the representation as based upon personal knowledge, or in circumstances in which he should have known the untruth of the representation, and that the defendant had an economic interest in the transaction. *Reda* at 268–69, 426 N.W.2d at 102.

unique needs and specific operating requirements of Consolidated, that would have maximum resistance to corrosion and abrasion, a long equipment life, and outstanding performance and reliability, and that would be reasonably fit for the production of white liquor. The complaint alleges that the representations were untrue and that Consolidated relied on them to its detriment.[3]

**[2]**

The complaint fails to state a misrepresentation claim. The majority of the representations complained of relate to the quality of the clarifier. A representation is one of opinion if it expresses only the maker's judgment as to quality, value, authenticity, or other matters of judgment. *Restatement (Second) of Torts* sec. 538A (1976). Consolidated does not allege that Dorr-Oliver represented that the clarifier would last any minimum length of time, only that the clarifier would have a "long equipment life." Such representations are "puffing" and as such cannot support a misrepresentation action. *Id.* at sec. 542 comment e.

The alleged representations that the clarifier to be constructed would meet the "specific operating requirements" of Consolidated and would be reasonably fit for the production of white liquor were promises of future performance. Statements of fact must relate to present or pre-existing facts, not something to occur in the future. *U.S. Oil v. Midwest Auto Care Services,* 150 Wis. 2d 80, 87, 440 N.W.2d 825, 827 (Ct. App. 1989). Dorr-Oliver is liable in tort for such representations only if it intended not to create such a clarifier when it made the representations. *Badger Bearing Co. v. Burroughs Corp.,* 444 F. Supp. 919, 925 (E.D. Wis. 1977), *aff'd,* 588 F.2d

---

[3]The complaint also alleges additional elements necessary for the two misrepresentation causes of action. *See supra* note 2.

838 (7th Cir. 1978). Appellants do not allege that such was Dorr-Oliver's intent.

Because the alleged representations were not of fact, the trial court properly granted summary judgment dismissing appellants' misrepresentation claims.

### 3. INCLUSION OF WARRANTY PROVISIONS IN CONTRACT OF SALE

The evidence concerning the creation of a contract between the parties is undisputed. We discuss it without sequentially reviewing the affidavits supporting Dorr-Oliver's motion and then the opposing affidavits.

During 1979, Consolidated solicited a bid from Dorr-Oliver for a white liquor clarifier mechanism. Dorr-Oliver sent Consolidated a revised sales proposal on April 25, 1979. Attached to the proposal was a preprinted form entitled "General Terms and Conditions." Those terms and conditions contain an express warranty to repair or replace parts with defects in materials or workmanship and disclaim all other warranties, express or implied.[4]

---

[4]The applicable provision reads:

7. WARRANTY:

(a) Seller warrants said equipment to be free from defects in material and workmanship. Subject to the provisions of paragraph (b), Seller shall replace or repair F.O.B. point of manufacture parts proven to be defective in material or workmanship within one year from date of delivery provided Buyer gives prompt written notice of each defect to Seller. Seller shall be liable for backcharges, credits or other charges for the reasonable cost of such repair or replacement by Buyer only if Seller authorizes in writing the nature and extent of the repair or replacement involved prior to the commencement thereof by Buyer. Buyer agrees to perform, at its own expense, such cutting, trimming, fitting and other field work on said equipment as is customarily done in the field. Decomposition by chemical action and wear caused by the presence of abrasive materials shall not constitute defects. Seller shall not be liable for any lost profit or other damage,

Consolidated does not claim a breach of the express warranty contained in the contract. Rather, Consolidated claims that Dorr-Oliver made certain extra-contractual express warranties in an advertising brochure. The question is whether the warranty provisions are part of the contract between the parties. If they are, then Consolidated has no claim for breach of extra-contractual express warranties and the trial court properly dismissed that claim. We conclude that the provisions are part of the contract.

delay or loss which may result, directly or indirectly, from the adjustment, alteration, repair, maintenance, operation, or interruption thereof, of any said equipment.

(b) Commodities not manufactured by Seller are warranted or guaranteed to the extent and in the manner they may be warranted or guaranteed to Seller by the manufacturer thereof, and to the extent such warranty or guaranty may reasonably be enforced without litigation by Seller.

(c) The remedy and liability for breach of warranty set forth in this Paragraph . . . shall be the sole and exclusive remedy and liability for such breach.

(d) THERE ARE NO WARRANTIES OF FITNESS FOR ANY PARTICULAR PURPOSE OF SAID EQUIPMENT OR ANY OTHER PURPOSE OF SAID EQUIPMENT OR ANY OTHER WARRANTIES (EXPRESS, IMPLIED OR STATUTORY) CONCERNING THE PERFORMANCE CAPABILITY THEREOF, OR ANY OTHER REPRESENTATIONS OR GUARANTEES, OTHER THAN THE WARRANTIES, REPRESENTATIONS AND GUARANTEES SET FORTH IN THIS PARAGRAPH OR WHICH SHALL BE SPECIFICALLY DESIGNATED AS A GUARANTEE BY THE LEGEND "PERFORMANCE GUARANTEE" APPEARING THEREON.

An additional liability limitation reads:

14. LIABILITY: Notwithstanding any liabilities or responsibilities assumed by Seller hereunder, Seller shall in no event be liable for lost profit, downtime, operating or maintenance costs or for any other special, indirect or consequential damages.

The terms and conditions state that the proposal becomes a binding contract only upon approval in writing thereon by a Dorr-Oliver officer in its Stamford, Connecticut, home office. The form contains a block for signature by the customer and for approval by the home office. But the form itself was never signed by Consolidated or approved in writing thereon by the Dorr-Oliver home office.

The routine practice of Consolidated's purchasing agent was to read such "General Terms and Conditions," and he understood them to be part of the agreement between the parties to the clarifier transaction. Consolidated placed an oral order on May 14, 1979 with a Dorr-Oliver branch office. Dorr-Oliver's order management department received the order on May 16. The purchasing agent does not specifically recall placing that order. The receipt of the order was acknowledged by Dorr-Oliver by letter dated May 22.

On May 18, 1979, Consolidated issued a purchase order to Dorr-Oliver. The purchase order quoted the price of $38,862 contained in the April 25 proposal and referred specifically to the proposal by file number.[5] On May 21, Dorr-Oliver received the purchase order and replied to it by letter dated June 19. That letter, signed by an order management department employee in Dorr-

---

[5]The relevant portion of the purchase order reads:

1 PC DORR-OLIVER WHITE LIQUOR CLARIFIER MECHANISM, TYPE A, FOR INSTALLATION IN A COVERED STEEL FLAT BOTTOM TANK 60'-0" I.D. BY 30'-0" HIGH.

PRICE $38,862.00 PER QUOTATION DATED APRIL 25, 1979. QUOTE NO. 31400 REVISED. REF. FILE PT-9027.

PLEASE FURNISH 5 SETS CERT. PRINTS AND MANUALS.

THIS IS A CONFIRMING ORDER TO BILL WANGLER . . . DO NOT DUPLICATE.

Oliver's home office, accepted the order "on condition that . . . . only the terms and conditions of sale set forth in [the April 25] Proposal shall govern this transaction."[6] That letter was the final writing between the parties before the clarifier was installed.

Because the sale of the clarifier was a transaction in goods, it is governed by the uniform commercial code—sales (UCC-Sales), ch. 402, Stats. Secs. 402.102 and 402.105(c). Since the facts are undisputed, issues concerning the contract formation are questions of law. *Resch v. Greenlee Bros. & Co.,* 128 Wis. 2d 237, 240, 381 N.W.2d 590, 591 (Ct. App. 1985). We decide such questions without deference to the decision of the trial court. *State v. Big John,* 146 Wis. 2d 741, 748, 432 N.W.2d 576, 579 (1988).

Dorr-Oliver's April 25 revised proposal was an offer to sell. Consolidated accepted that offer orally on May 14 and later by purchase order issued May 18 explicitly referencing the proposal. Consolidated's purchasing

[6]The letter reads in relevant part:

We acknowledge receipt of and thank you for your Purchase Order No. 70002–KPTX dated 5/18/79. This order is accepted on condition that the equipment to be furnished hereunder shall be as specified in our Proposal No. P–31400A, dated 25 April 79, and that only the terms and conditions of sale set forth in said Proposal shall govern this transaction.

As a point of clarification, our Proposal price did not include sale, use, excise or similar taxes and should there be any applicable, they would be for the account of, and payable by, the buyer.

We are proceeding on this basis unless promptly advised by you to the contrary. In this regard we would be pleased to consider specific modification to these terms, if presented to us promptly in writing.

Our best estimated shipment schedule is as follows:
One (1)—Type A—Dorr-Oliver White Liquor Clarifier—late-December 79.

agent understood Dorr-Oliver's terms and conditions were part of the bargain between the parties. He never sought to modify those terms. He admits it was his usual practice to read them, and he had in the past bargained over similar terms and conditions with other vendors.

A written agreement need not be signed by both parties to be effective. *Chudnow Const. Corp. v. Commercial Disc. Corp.,* 48 Wis. 2d 653, 657, 180 N.W.2d 697, 698 (1970). Consolidated argues, however, that it could not have accepted the written terms and conditions in Dorr-Oliver's proposal unless both Consolidated and Dorr-Oliver's home office had signed the proposal in the spaces provided. We disagree.

The provision in its proposal requiring the signature of an officer at its home-office was for Dorr-Oliver's protection. By failing to contest Consolidated's May 14 oral acceptance (confirmed by written purchase order on May 18), Dorr-Oliver waived that protection. *See Albright v. Stegeman M. C. Co.,* 168 Wis. 557, 560, 170 N.W. 951, 952 (1919) (car dealership bound by contract, even though not countersigned by an officer as required by its provisions). Consolidated cannot invoke that provision to deny that it had accepted the offer, namely the April 25 proposal, and so entered a binding contract.

We conclude that the disclaimer provisions applicable to express and implied warranties found on the final, preprinted page of Dorr-Oliver's April 25 proposal are a part of the contract between Dorr-Oliver and Consolidated. For that reason, the trial court properly dismissed Consolidated's claim for breach of express warranties.

## 4. INCONSISTENT EXPRESS AND IMPLIED WARRANTIES

Consolidated also claims a breach of implied warranties of merchantability. We have already held that the terms and conditions of the April 25 proposal are part of the contract between the parties. If the terms and conditions effectively disclaim all implied warranties, Consolidated's claim fails. Consolidated argues, however, that the disclaimer provisions did not effectively disclaim implied warranties of merchantability.

Although it disclaimed all warranties, express or implied, other than as provided by the terms and conditions, the April 25 proposal did not use the term "merchantability." *See supra* note 4. Section 402.316(2), Stats., provides in relevant part: "Subject to sub. (3), to exclude or modify the implied warranty of merchantability or any part of it the *language must mention merchantability* and in case of a writing must be conspicuous . . . ." (Emphasis added.) The parties dispute whether the contractual language effectively disclaimed all implied warranties of merchantability.

The implied warranties of merchantability Consolidated relies on are set forth in sec. 402.314(2), Stats.: "Goods to be merchantable must be at least such as: (a) Pass without objection in the trade under the contract description; and . . . (c) Are fit for the ordinary purposes for which such goods are used . . . ." Dorr-Oliver's answer denies that Dorr-Oliver breached any implied warranty.

However, Dorr-Oliver's preprinted terms and conditions provide an express warranty that the clarifier is free from defects in materials and workmanship and further provide that "[d]ecomposition by chemical action and wear . . . shall not constitute defects." The parties agree that "decomposition by chemical action" is synon-

ymous with "corrosion." Because this provision overrides any implied warranty of merchantability, we need not decide whether Dorr-Oliver effectively disclaimed the implied warranties Consolidated relies on.

The override results from sec. 402.317, Stats., which provides in part:

> Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant. In ascertaining that intention the following rules apply:
>
> . . ..
>
> (3) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose.

It is unreasonable to construe the contract to permit recovery for damage due to corrosion. Such recovery under an implied warranty of merchantability would be inconsistent with the express warranty against defects which excluded corrosion as a defect. An implied warranty of fitness for a particular purpose arises out of sec. 402.315, Stats., and is not an implied warranty of merchantability under sec. 402.314(2). The provision of the express warranty as to corrosion therefore overrides any implied warranties of merchantability. Sec. 402.317(3).

It is undisputed that corrosion caused the clarifier failure. The provision in the express warranty as to corrosion applies. Because the failure would not breach any of the implied warranties of merchantability Consolidated relies on, we need not and do not decide whether such warranties were disclaimed. The trial court properly granted judgment to Dorr-Oliver on that claim.

## 5. CONCLUSION

The trial court properly granted summary judgment to Dorr-Oliver on each of Consolidated's claims. We affirm the judgment.

*By the Court.*—Judgment affirmed.