## Metropolitan Life Ins. Co. v. Edelen's Ex'x.

November 5, 1948.

Wm. Marshall Bullitt, R. Lee Blackwell, Donald Q. Taylor and Bullitt & Middleton for appellant.

E. E. Hubbard and Ernest N. Fulton for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Morgan L. Edelen brought this action March 19, 1946, against the Metropolitan Life Insurance Company on an insurance policy issued by the defendant on April 1, 1937, on the life of Alice M. McGlasson. The policy was for $1,000, and the plaintiff was named therein as the beneficiary. He was the insured's grandfather.

After setting forth the issuance of the policy and the payment of all premiums due, the plaintiff alleged in the petition that Alice M. McGlasson had been absent from her usual place of residence for more than seven consecutive years, and had not been heard from by those who, if she had been or were alive, would naturally have intelligence of her; that a diligent effort had been made to find her, but to no avail; and that he had made demand upon the Company for the amount of the policy, but payment had been refused. He asked for a judgment declaring the insured to be dead, and that he recover of the defendant the sum of $1,000 and the further sum of $50.60, the amount of premiums paid up to and including March 1, 1946. The plaintiff died in July, 1946, and the action was revived in the name of his executrix, Lizzie Morgan Edelen. The parties waived a jury, and the case was submitted to the court on the law and facts. The pertinent part of the court's finding of facts reads:

"(6) On April 5, 1937, Alice M. McGlasson, the insured under the policy sued on herein, left the home of her aunt, Lizzie Morgan Edelen, in Covington, Kentucky, and from that day up to and including March 16, 1946, Alice M. McGlasson has been absent from her usual place of residence and has not been heard of or from by those who, if she had been or were alive, would naturally have intelligence of her, and diligent efforts were made by the plaintiff and the family of Alice. M. McGlasson to find the said Alice M. McGlasson or to obtain intelligence of her whereabouts and without success.

"(7) There is no evidence in the record that the insured, Alice M. McGlasson, is still living, nor is there any valid reason shown for her disappearance from her home and for continuing to absent herself therefrom or her failure to communicate with those persons who would naturally have intelligence of her were she alive.

"(8) On April 5, 1944, Alice M. McGlasson, the insured under the policy sued on herein, was and is presumed to be dead and was in fact dead of said date."

Judgment was entered for the plaintiff, and the defendant has appealed.

The sole reason assigned for reversal of the judg-

ment is that Alice McGlasson's disappearance was premeditated and does not raise a presumption of death. The argument is based on the fact that Alice's mother had disappeared, and on some slight evidence that Alice was discontented and unhappy at the time she left her aunt's home in Covington. Alice's mother, Lydia Edelen, married Ralph McGlasson when she was sixteen years of age. They had three children. Alice, the youngest, was born July 21, 1918, and six weeks after her birth her mother disappeared. She was seen in Indianapolis about two years later by her cousin, Theda Pulliam, but has never been seen since. After her disappearance the oldest child, Ralph N. McGlasson, and Alice were taken to the home of their grandfather, Morgan Edelen, in Bardstown, and the other child, a boy, was taken by his great-uncle, Arch Pulliam, who adopted him. Alice's father, Ralph McGlasson, obtained a divorce from the absent mother, married again, and took Alice, then about three years of age, to his home in Louisville, where she lived until her father died in 1936. She graduated from high school in 1936, and then entered a business school in Louisville. She lived with her stepmother several months after her father's death, and then went to Covington, Kentucky, to live with her aunt, Lizzie Morgan Edelen, who was a teacher in the public schools. She had written to her aunt that she was unhappy in Louisville. She went to Covington in November, 1936, entered a business school in Cincinnati, and attended the school regularly, returning each day to her aunt's home in Covington, until April 5, 1937. On that day Lizzie Edelen, as was her custom, left in her automobile for the school where she taught, and her niece accompanied her to a point where she boarded a bus each morning for Cincinnati. She waved goodbye to her aunt, and was never seen again by any member of her family. She did not go to the school she had been attending daily, but during the day appeared at a department store in Cincinnati where her aunt had a charge account, purchased a coat and had it charged to her aunt. A few days before her disappearance she received $20 from her grandfather, Morgan Edelen, to pay her tuition at the business school. When she failed to return to her home in Covington on April 5, 1937, her aunt telephoned to the school in Cincinnati and learned that

Alice had not been there during the day. Miss Edelen then had the details of her niece's disappearance broadcast over two radio stations, one in Cincinnati and one in Covington, and notified the Covington police. Later she employed a Cincinnati detective to attempt to locate her niece. Alice's brother, Ralph N. McGlasson, went to Covington to try to locate his missing sister. He was employed at the time by the American Life Insurance Company, and he gave pictures of his sister to the agents of that company so they might attempt to locate her on their routes through Cincinnati and Covington. The Commonwealth Life Insurance Company, which had a policy on Alice, and the Metropolitan Life Insurance Company, appellant herein, were also notified of her disappearance. About a year later Miss Lizzie Edelen was told by an acquaintance, Miss Lorene Stigall, that she saw or thought she saw Alice on the street in Bowling Green, Kentucky. Miss Edelen placed little credence in the report, since Miss Stigall had seen Alice only twice and knew her very slightly. However, Miss Edelen had a friend in Bowling Green make an investigation, but to no avail. Miss Stigall did not testify. Appellant attempted to prove by Mrs. Elizabeth Meyers of Louisville, an intimate friend of Alice McGlasson, that Alice was at her home about two years after her disappearance. All Mrs. Meyers stated was that a man and woman appeared at her home during her absence. They were in an automobile, and the man got out and asked the maid if Mrs. Meyers was at home. The woman remained in the car. Mrs. Meyers merely thought the woman might have been Alice. Appellee's witnesses testified that Alice was a normal girl and apparently was happy and contented. On the other hand, Mrs. Meyers, who corresponded regularly with Alice prior to her disappearance, testified that Alice said in her letters from Covington that she was dissatisfied with the arrangement there. The evidence shows that Alice McGlasson has been absent from her usual place of residence continuously since April 5, 1937, and has not been heard from by those who, if she had been alive, would naturally have intelligence of her. The evidence to the contrary is too vague to be of probative value. The evidence also shows that diligent search was made to locate her. KRS 422.130 reads:

"If any person who has resided in this state goes from and does not return to this state for seven successive years, he shall be presumed to be dead, in any case wherein his death comes in question, unless proof is made that he was alive within that time."

As appointed out in Columbia Life Insurance Company v. Perry's Adm'x, 252 Ky. 793, 69 S. W. 2d 393, and Commonwealth Life Insurance Company v. Caudill's Adm'r, 266 Ky. 581, 99 S. W. 2d 745, the statute does not abrogate the common law rule on the same subject, which is that "after the lapse of seven years without intelligence concerning the person, the presumption of life ceased, and the burden of proof devolved on the other party to show that he was alive." Mutual Benefit Life Insurance Company v. Martin, 108 Ky. 11, 55 S. W. 694, 695. In Columbia Life Insurance Company v. Perry's Adm'x, supra, three disinterested witnesses testified positively that they saw the insured within the seven year period of his alleged absence. The testimony was uncontradicted, and the witnesses were unimpeached. It was held that this testimony overcame the presumption of death. The evidence in the present case relied upon by appellant to show that Alice McGlasson was seen alive within the seven year period is not positive but is vague and uncertain, and, at most, raises a question for the jury. Since the jury was waived, the judgment of the court must be given the same effect as the verdict of a properly instructed jury.

Appellant argues that, at least, so much of the judgment as awarded the plaintiff $50.60, the amount of the premiums paid subsequent to April 5, 1944, is erroneous. This is upon the theory that the insured reappeared in April, 1939, and the legal presumption of death did not arise until the expiration of seven years after that date. Since we have found the evidence was sufficient to sustain the court's finding that there was no reappearance and that the presumption of death arose on April 5, 1944, the argument fails.

The judgment is affirmed.